# United States Court of Appeals
## For the First Circuit

No. 07-2202

MALY CHHAY,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Boudin, <u>Circuit Judge</u>,
Selya, <u>Circuit Judge</u>,
and Dyk,<sup>*</sup> <u>Circuit Judge</u>.

<u>Vanthan R. Un</u> on brief for petitioner.
<u>Jeffrey S. Bucholtz</u>, Acting Assistant Attorney General, Civil Division, <u>Terri J. Scadron</u>, Assistant Director, Office of Immigration Litigation, and <u>Greg D. Mack</u>, Senior Litigation Counsel, on brief for respondent.

August 15, 2008

---

<sup>*</sup>Of the Federal Circuit, sitting by designation.

**SELYA**, **Circuit Judge**. The petitioner, Maly Chhay, is a Cambodian national who seeks judicial review of a final order of removal entered by the Board of Immigration Appeals (BIA). She challenges a ruling declaring her ineligible for asylum, the denial of her cross-application for withholding of removal and protection under the United Nations Convention Against Torture (CAT), and the supposed trampling of her due process rights by an Immigration Judge (IJ). We lack jurisdiction over the asylum claim and find the remainder of her asseverational array unpersuasive. Hence, we deny the petition for review.

The facts are unremarkable. The petitioner lawfully entered the United States as a visitor on March 9, 2001 and married a United States citizen some four months thereafter. Her new husband filed an I-130 petition to her behoof along with an I-485 application for adjustment of her immigration status. These filings came to naught, in part because there was an absence of evidence that the parties intended to establish a life together. The couple soon divorced and, inasmuch as the petitioner had been denied an adjustment of status, the Department of Homeland Security instituted removal proceedings against her. See 8 U.S.C. § 1227(a)(1)(B).

The petitioner appeared in the immigration court on April 18, 2005, and indicated an intention to apply for asylum, withholding of removal, and protection under the CAT. The IJ ruled

-2-

on timeliness grounds that she was ineligible to seek asylum. See id. § 1158(a)(2)(B) (providing a window of one year from the date of an alien's arrival in the United States within which to file for asylum). Some seven weeks later, the petitioner cross-applied for withholding of removal and protection under the CAT. She did not actually apply for asylum.

The matter came on for hearing on January 6, 2006, albeit before a different judge. The petitioner conceded removability but claimed that she feared persecution in her homeland due to her membership in the Sam Rainsy political party — a group that stood in opposition to the party in power led by Prime Minister Hun Sen. She testified that, prior to emigrating to the United States, she worked as an accountant in Phnom Penh and simultaneously served the Sam Rainsy party as an unpaid liaison to the Cambodian Center for Human Rights (the Center). In that capacity, she attended provincial seminars throughout Cambodia concerning human rights (specifically, the abuse of women by government officials). She claims to have worked closely with the Center's director, Kem Sokha, and to have reported the information that she learned to Sokha. He ostensibly used it to denounce the government.

According to the petitioner, she feared that the government knew of her role as an informer. She noted that since her arrival in the United States, Cambodian officials have arrested Sokha and other persons associated with the Sam Rainsy party. She

-3-

views these arrests as a harbinger of what is likely to happen to her should she be repatriated.

To complement this testimony, the petitioner introduced a substantial amount of background information relating to conditions in her homeland. These exhibits included newspaper articles describing the arrests of Sokha and a broadcaster, Mam Sonando, in 2005.

Confronted with this and other evidence, the IJ focused on the petitioner's account of her partisan political activity. He stated that he was not persuaded by that aspect of the petitioner's testimony, explaining that it was wholly uncorroborated and thus inadequate to sustain her burden of proof. Relatedly, he found no credible evidence that torture was a likely result of repatriation. Consequently, he denied the petitioner's claims for relief and ordered her removal.

The petitioner appealed. The BIA adopted and affirmed the IJ's decision. In addition, it denied the petitioner's nascent due process claim premised on the IJ's supposed failure to consider relevant evidence. This timely petition for judicial review followed. See 8 U.S.C. § 1252(b)(1)-(2).

In immigration matters, this court ordinarily reviews the decision of the BIA. Stroni v. Gonzales, 454 F.3d 82, 86 (1st Cir. 2006). Here, however, the BIA summarily affirmed, adopting the

-4-

IJ's decision. In that circumstance, we review the IJ's decision directly. Id. at 86-87.

In the course of that review, we evaluate findings of fact, including credibility determinations, under a substantial evidence standard. Sok v. Mukasey, 526 F.3d 48, 52 (1st Cir. 2008). This standard is deferential; absent an error of law, we will reverse only if the record is such as to compel a reasonable factfinder to reach a contrary determination. Pan v. Gonzales, 489 F.3d 80, 85 (1st Cir. 2007). Phrased another way, we will accept all findings of fact made by the IJ as long as those findings are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Abstract legal propositions are reviewed de novo, but with some deference to the agency's reasonable interpretation of statutes and regulations within its ken. See Pulisir v. Mukasey, 524 F.3d 302, 307 (1st Cir. 2008); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984).

We start with the claim for asylum. The petitioner suggests before this court that she qualifies for an exception to the timeliness rules governing asylum applications and is thus eligible for asylum. This suggestion is meritless.

To qualify for asylum, an alien normally must show by clear and convincing evidence that she filed for that anodyne

-5-

within one year of her arrival in the United States. 8 U.S.C. § 1158(a)(2)(B); see Pan, 489 F.3d at 84 n.3. The petitioner did not seek asylum within that period. There is, however, an exception: an alien who files for asylum outside the one-year window may qualify by showing either extraordinary circumstances or changed country conditions. See 8 U.S.C. § 1158(a)(2)(D).

The petitioner's attempt to invoke this exception is late in coming. She had the opportunity to assert that claim before the second IJ but did not do so. By the same token, she made no claim before the BIA that the delay in filing for asylum resulted from either extraordinary circumstances or changed country conditions. Indeed, she neglected to raise her asylum claim at all before that body.

In this venue, the petitioner sings a new and different tune. She proclaims that the wave of arrests in 2005 marked a change in country conditions that justifies her untimely attempt to seek asylum. That does not explain, however, why she failed to raise the claim before the second IJ at the hearing held in January of 2006. Even less does it explain why she neglected to assert it in her subsequent filings with the BIA.

The law is clear that, given her failure to press the point before the BIA, the petitioner has not exhausted her administrative remedies. That, in turn, forecloses this court from exercising jurisdiction over any aspect of her asylum claim. See

-6-

<u>Sunoto</u> v. <u>Gonzales</u>, 504 F.3d 56, 59 (1st Cir. 2007); <u>Makhoul</u> v. <u>Ashcroft</u>, 387 F.3d 75, 80 (1st Cir. 2004).

We turn next to the petitioner's claim for withholding of removal.  To be eligible for withholding of removal, "an applicant has the burden of proving that, more likely than not, she would be subject to persecution on account of a statutorily protected ground should she be repatriated."  <u>Pulisir</u>, 524 F.3d at 308; <u>see</u> 8 U.S.C. § 1231(b)(3)(B)(i) (listing the five protected grounds: race, religion, nationality, membership in a particular social group, and political opinion).  The alien may carry this burden either by demonstrating past persecution or by direct proof of a likelihood of future persecution.  <u>Pulisir</u>, 524 F.3d at 308.

The record does not contain even a hint of an intimation that the petitioner experienced any persecution prior to her exodus from Cambodia.[1]  Consequently, the petitioner must satisfy her burden by proving a likelihood of future persecution.  <u>See</u>, <u>e.g.</u>, <u>Melham</u> v. <u>Gonzales</u>, 500 F.3d 78, 81 (1st Cir. 2007).

Under a statutory formulation in effect since 2005 (and applicable here), an alien may satisfy the devoir of persuasion on withholding of removal by her own testimony if that testimony is specific and credible.  <u>See</u> REAL ID Act of 2005, Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 231, 303 (2005) (codified at 8 U.S.C. §

---

[1]The record makes manifest that the petitioner's initial reasons for traveling to the United States were economic in nature.

1158(b)(1)(B)(ii)); see also Pan, 489 F.3d at 86. But the alien has the burden of proof, and if her testimony is not itself compelling the absence of easily obtainable corroborating documentation can be the final straw. See Sela v. Mukasey, 520 F.3d 44, 46 (1st Cir. 2008); Eke v. Mukasey, 512 F.3d 372, 381 (7th Cir. 2008); Pan, 489 F.3d at 83; Hayek v. Gonzales, 445 F.3d 501, 508 (1st Cir. 2006); see generally REAL ID Act § 101(a)(3). The substantial evidence test applies in these purlieus, and a reviewing court must accept the IJ's determinations with respect to the persuasiveness vel non of the alien's testimony, the availability of corroborating evidence, and the effect of non-production unless the record compels a contrary conclusion. See REAL ID Act § 101(e), 119 Stat. at 305 (codified at 8 U.S.C. § 1252(b)(4)); see also Eke, 512 F.3d at 381; Kho v. Keisler, 505 F.3d 50, 57 (1st Cir. 2007).

In the case at hand, the IJ found a need for something more than the petitioner's self-serving testimony to prove her claim of membership in the Sam Rainsy party. The petitioner failed to furnish any corroborating evidence. She also failed to explain why such evidence, which seemed readily available, was not supplied. On that basis, the IJ determined that the petitioner had failed to satisfy her burden of proof.

We think that these determinations are supported by substantial evidence. The closest case in point is Sela. There,

-8-

as here, the IJ found the petitioner generally credible but faulted the petitioner for failing to provide corroboration. See Sela, 520 F.3d at 46-48. Resting largely on "the absence of presumably attainable corroboration" and the absence of harm inflicted upon the petitioner before he left his homeland, the IJ concluded that he had not satisfied his burden of establishing that more likely than not, he would be persecuted upon his removal. Id. at 46. We upheld that determination based on the substantial evidence rule. See id.

Sela controls here. Nothing offered by the petitioner compels us to conclude that, had she been politically involved, she could not readily have obtained some corroborating evidence as to her claimed party membership. For example, the petitioner testified that her mother, who continues to reside in Cambodia, had possession of the petitioner's party membership cards, yet the petitioner gave the IJ no reason why her mother would be unable to send any of the cards (or copies of them) to the petitioner. Indeed, the petitioner's only comment as to why she had failed to obtain the cards or an affidavit from some knowledgeable person attesting to her party membership was that she had not thought that she would need corroborating evidence.[2]

---

[2]Even so, the petitioner neither asked for a continuance to obtain the materials nor moved to reopen the record to supply corroboration.

The petitioner's failure to prove her membership in the Sam Rainsy party defeats her claim. Without such proof, she cannot demonstrate that she would be subject to persecution on account of her political opinion should she be repatriated. She is, therefore, not entitled to set aside the IJ's refusal to withhold removal. See Elias-Zacarias, 502 U.S. at 481; Hayek, 445 F.3d at 508-09.

This brings us to the petitioner's claim under Article III of the CAT. To prevail on such a claim, she must prove that it is more likely than not that she will be tortured if removed to her homeland. Jiang v. Gonzales, 474 F.3d 25, 32 (1st Cir. 2007). For this purpose, torture is defined as "any act by which severe pain and suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

The IJ found that the petitioner had not carried her burden of proof on the CAT claim. This position is entirely supportable. To the extent that the petitioner's fear that the Cambodian government will subject her to torture is based on her membership in the Sam Rainsy party, she has been unable to substantiate that membership. Beyond that, her fear of torture is wholly speculative and her reasoning in support of it is amorphous:

-10-

she has not advanced any developed argumentation that, apart from her supposed party affiliation, would satisfy the criteria necessary for a successful CAT claim. Thus, we deem any such line of argument abandoned. See Pan, 489 F.3d at 87; Jiang, 474 F.3d at 32.

Before turning to the petitioner's due process challenge, we add a coda. The elliptical phraseology employed by the IJ in this case, in which he termed the petitioner's testimony generally credible while making clear that he did not believe a specific portion of it (i.e., her claim of party membership), is confusing. Immigration judges would do well to take pains to use more straightforward language. The clearer a judges findings, the easier they are for the parties to assess and for a reviewing court to evaluate.

We come now to the petitioner's final challenge. This challenge has two parts, both of which relate to her charge that the proceedings below offended due process.

The first branch of the petitioner's argument consists of a claim that the IJ violated her due process rights by failing to consider the extensive background documentation that she submitted to provide support for her avowed fear of future persecution. We review de novo a claim that the agency's conduct transgressed an alien's due process rights. Pulisir, 524 F.3d at 311; Teng v. Mukasey, 516 F.3d 12, 17 (1st Cir. 2008).

This argument need not detain us. A complaining party must show prejudice in order to demonstrate a cognizable violation of due process. Pulisir, 524 F.3d at 311. In this context, prejudice equates with a showing that "an abridgement of due process is likely to have affected the outcome of the proceedings." Id.

Here, the record suggests that the IJ fully considered the documentation proffered by the petitioner. For example, he referred in his decision to a State Department country report as well as to the background information regarding human rights violations in Cambodia and an assortment of newspaper clippings.

In all events, further perscrutation of the background information would not have made a dispositive difference. As said, the IJ rested his decision on the paucity of proof anent the petitioner's putative membership in the Sam Rainsy party. The background evidence would not in any way shed light on this individualized issue and, thus, any failure to consider it would have been harmless.

The second branch of the petitioner's due process challenge posits that the IJ accorded insufficient weight to evidence of general conditions in Cambodia. This claim will not wash: the mere fact that the IJ put weight on certain factors and reached a conclusion contrary to the petitioner's interests does not constitute a due process violation. See, e.g., id. at 309.

-12-

"So long as the IJ has given reasoned consideration to the evidence as a whole, made supportable findings, and adequately explained [his] reasoning," no more is exigible.[3] Pan, 489 F.3d at 87.

We need go no further. For the reasons elucidated above, we deny the petition for review.

**So Ordered**.

---

[3]The petitioner's reliance on Cordero-Trejo v. INS, 40 F.3d 482 (3d Cir. 1994), is mislaid. There, the IJ based his assessment on unfounded assumptions, without any consideration of the background evidence of country conditions. See id. at 490-91. Here, in contrast, substantial evidence supports the IJ's assessment of the petitioner's case, and his references to evidence of country conditions indicate that he did take the background evidence into consideration.