Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 11-1378

KAMAL DAHAL,

Petitioner, Appellant,

v.

ERIC H. HOLDER, JR.,
Attorney General of the United States

Respondent, Appellee.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Circuit Judge</u>,
Souter, <u>Associate Justice</u>,[*]
and Thompson, <u>Circuit Judge</u>.

<u>Jose A. Vazquez</u> for appellant.
<u>Tony West</u>, Assistant Attorney General, with whom <u>Carl H. McIntyre</u> and <u>Justin R. Markel</u> were on brief, for appellee.

July 24, 2012

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** The Board of Immigration Appeals denied an alien's motion to reopen and reconsider his application for asylum and comparable relief. We find no abuse of discretion, see INS v. Doherty, 502 U.S. 314, 323 (1992), and affirm.

Kamal Dahal is a native and citizen of Nepal, admitted to the United States in April 2006 on an H-2B visa, as a nonimmigrant, temporary, non-agricultural worker. His status was later changed to a B-2 visitor for pleasure, and he was authorized to remain in the United States until May 15, 2007. About a month before that deadline, Dahal applied for asylum, see 8 U.S.C. § 1158, withholding of removal, see 8 C.F.R. § 1208.16, and protection under the United Nations Convention Against Torture.[1] His case was later referred to an immigration judge,[2] who held a merits hearing on December 17, 2008, at which Dahal testified. The judge denied his petition that same day.

An alien is eligible for asylum if he is a "refugee," meaning a person "unable or unwilling to return to" his home

---

[1]This treaty was implemented in the United States by section 2242(b) of the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. 105-277, 112 Stat. 2681 (Oct. 21, 1998), and 8 C.F.R. § 1208.16.

[2]While his application was pending, the Department of Homeland Security placed him in removal proceedings by filing a Notice to Appear charging him with remaining in the United States without permission. See 8 U.S.C. § 1227(a)(1)(B).

country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). If, for the same reasons, an alien's "life or freedom would be threatened in the proposed country of removal," 8 U.S.C. § 1231(b)(3), he qualifies for withholding of removal under the Immigration and Nationality Act. Lastly, removal may be withheld under the Convention Against Torture if "it is more likely than not that [the alien] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Dahal contended that he could not safely return to Nepal, because he feared that members of a powerful Maoist insurgency in that country would persecute him at least partly on the basis of his membership in the Nepali Congress Party, which he has served in humanitarian activities and assisted in local elections. The insurgents allegedly extorted money from him at his business, insisted that he quit the Congress Party, invaded his house, took money from his family, and brutally beat him. After continued harassment, Dahal says, he sent his wife and son to live with her parents in a different village, while he stayed with a friend in another village before traveling to the United States.

The immigration judge noted "multiple inconsistencies" between Dahal's accounts of things at the hearing and the allegations in his petition, but nonetheless made no adverse

credibility finding, and even noted that Dahal generally appeared to have testified in earnest. Yet he did not provide sufficient evidence to "overcome the inconsistencies and omissions," which left the judge with enough doubt about the reliability of his testimony that she ultimately held that Dahal's overall claim for relief "fails for lack of proof."

Dahal filed a notice of appeal with the Board of Immigration Appeals in January 2009, resulting in affirmance of the immigration judge's decision in October 2010. A month later, he presented the Board with a motion to reopen his case, offering new documentary evidence supporting his claims of oppression at the hands of the Maoists, and claiming it was error for the judge to deny his petition for lack of documentation while at the same time finding him credible. The Board denied the motion to reopen to submit new evidence, construed Dahal's latter contention as a motion to reconsider, and denied it as well.

Although there was leeway for judgment in ruling on the motion, we think it was not an abuse of discretion to deny it. To his motion Dahal attached several exhibits that supported his claims, including a report from an emergency medical clinic, receipts for donations to the Nepali Congress Party, a police report mentioning Maoists' threats aimed at Dahal and extortion from him, his birth certificate, and bank statements for himself and his business. He subsequently added affidavits from his wife

and a former neighbor, as well as a letter from the Congress Party. The Board nevertheless denied his motion to reopen for failure to establish that any of these documents was unobtainable at an earlier stage of the process, see 8 U.S.C. § 1158(b)(1)(B); 8 C.F.R. § 1003.2(c), and we may reverse this finding only if "a reasonable trier of fact [would have been] compelled to conclude that such corroborating evidence [was] unavailable" sooner. 8 U.S.C. § 1252. Dahal has not shown this. Although he claimed that it was difficult to get documentation from Nepal, he had, as the Board pointed out, included some Nepalese documents with his original application, and did not convincingly explain why the paperwork later submitted could not have been produced as well. He offers no additional details in his briefs on appeal; rather, he reiterates that the documents were difficult to procure because they were in Nepal, and because his family's record keeping was disrupted by their change of residence. This shows that it took work to get the evidence, but it does not compel reversal of the Board's finding that Dahal failed to show he lacked a prior opportunity to produce the records.

In fact, Dahal's position is even weaker than that. His lawyer was presumably aware that the immigration judge would expect to review documentary evidence at the initial hearing, see 8 C.F.R. § 1208.9(e), but even assuming that it was not until the hearing date of December 17, 2008 that he had notice of the need for more

corroboration, he could have moved to reopen proceedings to introduce his new evidence. See 8 C.F.R. § 1003.23. As it happened, however, nearly two years passed between the immigration judge's ruling and the Board's decision on the initial appeal. He apparently made no attempt to supplement the record until after the appeal went against him, and it was at that late date that he failed to carry his burden of showing that the evidence "was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c).

As to what the Board treated as Dahal's request for reconsideration, he argues that the immigration judge's finding that he was a credible witness should have obviated any need for documentation. But more than credibility in a strict sense is or may be at stake. An immigration judge "may" grant asylum to an alien on the basis of his testimony alone, "but only if the applicant [not only] satisfies the trier of fact that the applicant's testimony is credible, [but also] is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B).[3] To be sure,

---

[3] The same standard applies to motions to withhold removal under the Immigration and Nationality Act. See 8 U.S.C. § 1231(b)(3)(C) ("In determining whether an alien has demonstrated that the alien's life or freedom would be threatened . . . the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 1158(b)(1)(B) of this title.").

the regulations implementing the Convention Against Torture do not go into such detail (providing only that "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.16(c)(2)). But even here, the governing standard is "may be sufficient," which at most authorizes a judge to withhold removal without corroborative evidence, but mandates nothing more. Thus it is not enough to cite cases from other circuits in which credible testimony sufficed, see Karouni v. Gonzales, 399 F.3d 1163, 1173-74 (9th Cir. 2005); Diallo v. INS, 232 F.3d 279, 287-89 (2d Cir. 2000), and for that matter the cases Dahal cites pre-date the REAL ID Act of 2005's amendments to the relevant statutes, recognizing discretion to demand documentary confirmation. Accordingly, this circuit has recently upheld immigration judges' denials of withholding of removal where "the [immigration judge] found the petitioner generally credible but faulted [him] for failing to provide corroboration." Chhay v. Mukasey, 540 F.3d 1, 6-7 (1st Cir. 2008); Sela v. Mukasey, 520 F.3d 44, 46 (1st Cir. 2008). There was no error in the Board's affirmance of the immigration judge who did the same thing here.

**Affirmed.**