Not for Publication in West's Federal Reporter

# United States Court of Appeals

## For the First Circuit

No. 13-1246

OMAR ANTONIO DUQUE-CÁCERES,

Petitioner,

v.

ERIC H. HOLDER, JR.,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

---

Ramón M. González, on brief for petitioner.
Wendy Benner-León, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, Stuart F.
Delery, Assistant Attorney General, Civil Division, and Anthony W.
Norwood, Senior Litigation Counsel, Office of Immigration
Litigation, on brief for respondent.

---

July 29, 2014

---

**TORRUELLA, <u>Circuit Judge</u>.** Petitioner Omar Antonio Duque-Cáceres ("Duque"), a native and citizen of Venezuela, seeks review of a final order of deportation issued by the Board of Immigration Appeals ("BIA"). The BIA dismissed his appeal of the Immigration Judge's ("IJ") decision denying Duque's application for a waiver of the joint filing requirements to remove the conditions of his residency ("I-751 waiver").

Because the administrative record provides substantial support for the findings of both the IJ and the BIA, and does not compel a contrary conclusion, we deny Duque's petition for review.

## I. <u>Background</u>

### A. <u>Duque's marriage and status adjustment</u>

On May 2, 2002, Duque, a native and citizen of Venezuela, was admitted to the United States as a visitor. On December 10, 2004, Duque married Gladys López ("Gladys"), a U.S. citizen. Following the marriage, Duque's status was adjusted to lawful permanent resident on a conditional basis.[1]

---

[1]  Pursuant to § 216(a)(1) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. §§ 1186a(a)(1), any alien who obtains lawful-permanent-resident status based on marriage to a United States citizen, obtains said status on a conditional basis. In order to remove the conditional basis, the married couple must file a joint petition to remove the conditions -- <u>i.e.</u>, an I-751 petition -- and appear for an interview with the Department of Homeland Security ("DHS") to answer questions and provide information showing that the marriage is bona fide. 8 U.S.C. §§ 1186a(c)(1), (d); 8 C.F.R. §§ 216.4.

**B. Denial of Duque's joint I-751 petition**

On January 11, 2008, Duque and Gladys submitted a joint I-751 petition to the United States Citizenship and Immigration Services (the "CIS"), seeking to remove the conditional basis of Duque's lawful permanent-resident status. On April 30, 2009 they appeared for an interview with a CIS officer. During Gladys's individual interview, she withdrew from the joint petition and claimed that: (1) she and Duque had lived in different residences since his arrival in Puerto Rico; (2) she and Duque had never lived together as husband and wife; and (3) she had married Duque because she wished to help him, but also because he offered to pay her $2,000 in exchange for her assistance in securing lawful residency.

Unsurprisingly, the CIS denied the joint petition and terminated Duque's permanent-resident status. In its decision, the CIS stated that Gladys admitted that the joint petition contained false statements, and that the credit cards presented to the CIS officer by Duque to evince joint accounts -- purportedly held by both Duque and Gladys -- were actually held in Duque's sole possession and were only provided to Gladys the week of the interview. The decision also mentioned that the CIS interviewer offered Duque the opportunity to rebut Gladys's statements, and he initially claimed that her statements were false. However, when asked later if he wanted to change anything in his statement, Duque admitted that he and Gladys never lived together as husband and

wife, that she married him as a favor, and that he would provide Gladys with monetary aid when necessary.

## C. Removal proceedings

On May 5, 2009, the Department of Homeland Security ("DHS") commenced removal proceedings against Duque. Appearing with counsel before the IJ, Duque admitted all of the allegations against him, save for the allegation that his marriage was fraudulent, and he challenged the charge of removability. At the hearing, Duque indicated that he was seeking review of the CIS's termination of his permanent-resident status, that he had divorced Gladys on June 5, 2009, and that he had applied for an I-751 waiver.[2] In response, the IJ continued the proceedings until the CIS ruled on Duque's I-751 waiver petition. The IJ could then review the CIS's decision on the I-751 waiver, if necessary.

## D. Denial of the I-751 waiver

In response to Duque's I-751 waiver petition, the CIS sent Duque a notice instructing him to submit evidence or supporting documents in order to establish the legitimacy of his marriage to Gladys. Duque made no submissions in response to the

---

[2] An alien is permitted to seek a waiver of the joint filing and interview requirements to remove the conditional basis of his resident status if the marriage ended in divorce. INA § 216(c)(4)(B), 8 U.S.C. § 1186a(c)(4)(B). In order to qualify for this waiver, the alien must show that: (1) he entered into the qualifying marriage in good faith; (2) the marriage has terminated, except through death of his spouse; and (3) he was not at fault for failing to meet the I-751 filing and interview requirements. Id.

-4-

CIS's request for evidence.

On December 24, 2009, the CIS denied Duque's I-751 waiver petition. In its decision, the CIS noted the procedural history of Duque's applications -- specifically, his prior joint I-751 petition which the CIS denied. The CIS also stated that Duque "failed to submit any evidence with the waiver petition to establish that [the] qualifying marriage was entered into in good faith." As a result, and incorporating by reference the reasoning contained in its original denial decision, the CIS found that Duque failed to establish the bona fides of his marriage to Gladys and, thus, his eligibility for a waiver.

**E. Review by the Immigration Court**

Duque sought review of the CIS's denial of his I-751 waiver petition, asking the IJ to overturn the CIS's decision. On December 8, 2010, Duque and his two witnesses -- Luis Manuel Hernández ("Hernández") and Jamie Luis Landénez ("Landénez") -- appeared before the IJ to testify in support of Duque's I-751 waiver petition.

**1. Duque's testimony**

Duque testified that he and Gladys had lived together from the date of their marriage until April 30, 2009, when they "had a problem in the second immigration appointment." According to Duque, Gladys was having an affair with another man. Hernández -- Duque's friend and witness -- told him that Gladys had moved to

another town to live with the man with whom she was having an affair. Duque testified that, upon hearing this news, he immediately filed for divorce. On June 5, 2009, Duque and Gladys divorced, and she married her new partner on June 28, 2009.

Duque was asked why Gladys testified that she did not live with Duque and that he had paid her to marry him so that he could obtain immigration benefits. Duque responded that Gladys was lying because she wanted to "get rid" of him due to her affair. Duque denied having admitted at an earlier hearing that he never lived with Gladys.

Though Duque alleged that Gladys's five-year-old son Javier lived with them, Duque could not recall the child's last name or the name of Javier's father, and he stated that he never celebrated Javier's birthday with him.

Duque testified that he and Gladys lived in an apartment on Wilson Street, and that his friend, Hernández, had visited them at the apartment several times for social occasions, such as Duque's birthday in 2008. Duque indicated that Hernández had known Gladys prior to her meeting Duque and that Hernández had, in fact, introduced Gladys to Duque. Duque, however, could not remember where he was first introduced to Gladys.

Next, Duque claimed that his other friend, Landénez -- who would later testify in his support -- had met with Gladys and Duque two to three times and that Landénez had attended his 2008

birthday party.  The IJ pointed out that Duque previously claimed that only four people, of which Landénez was not one, had attended his birthday party.  Duque responded that he might have been mistaken, but that he was certain Landénez had met Gladys on his birthday in 2006.

As evidence of his legitimate marriage to Gladys, Duque asserted that at the time of the submission of his first petition -- i.e., the joint I-751 petition submitted with Gladys -- he proffered a 2007 lease agreement, a joint bank account statement, a joint medical insurance plan, and joint Sears and JC Penney credit cards.  Though he had lived at the apartment since 2005, Duque testified that he did not have a lease from before 2007 because the owner had not required one until that time.  Duque claimed that he did not have a lease for 2008, 2009, and 2010 because he told his landlord he was thinking of moving elsewhere due to troubles with Gladys and the owner did not require him to sign a new lease.

The IJ noted that Duque had failed to provide the Immigration Court with any documentary evidence of a shared life with Gladys –- a task he acknowledged he was required to fulfill -- and that he had failed to submit any of the documents he claimed to have given to the CIS interviewer.  In response, Duque testified that he believed that the IJ would have all the evidence that was in his file from the submission of his joint I-751, and that he

wanted the IJ to consider the evidence filed earlier as part of his joint I-751, though he was unable to recall precisely what evidence he had previously submitted.

The IJ confronted Duque with Gladys's adverse statements during her CIS interview that she never lived with Duque and that he paid her money to marry him. The IJ questioned Duque on whether, after originally denying Gladys's statements at the interview, he had recanted his story to the interviewer and admitted Gladys's statements to be true. Duque claimed to not remember his previous change of heart.

### 2. Hernández's and Landénez's testimony

Hernández testified next. Hernández first claimed to have met Gladys and Duque when they married in 2004, but later recanted and stated he met them both before they married. Though he could not remember the approximate date when he met Gladys, Hernández indicated that it was prior to meeting Duque. Later, however, Hernández testified that he had met Duque first. Although Hernández first testified that he was unaware of anyone living in the apartment with Gladys and Duque, he subsequently claimed that Gladys's son also lived with them.

Hernández claimed that he had seen Gladys with another man, but he did not testify consistently as to what year he witnessed the affair -- first claiming that he saw Gladys and another man in 2005 but later stating that he saw them in 2008.

Lastly, though Duque stated that Hernández's wife joined Duque, Gladys, and Hernández on social outings, Hernández claimed that she never did.

Landénez, Duque's second witness, initially testified that Gladys had a son, but later stated that he was unsure. He did testify that he never saw any children in Duque's apartment during any of his visits to Duque's home. Landénez contradicted Duque's testimony that Landénez had met Gladys in 2006, and instead claimed to have met her at their wedding in 2004.

## F. The IJ's decision

On December 8, 2010, the IJ denied Duque's request for an I-751 waiver and his request for voluntary departure, and ordered his removal from the United States. The IJ based his decision on the finding that Duque and his witnesses were not credible, and hence, Duque failed to prove that his marriage to Gladys was legitimate.

The IJ noted the myriad inconsistencies between and within the testimonies of the three men. The IJ also noted that, while testifying, Duque "seemed lost to respond, he was evasive[,]" and that his "demeanor was that of someone who is not telling the truth or is not sure about what he is saying."

Accordingly, the IJ found that Duque provided no evidence to support the proposition that he had entered into a good-faith marriage with Gladys, and that he provided no evidence to overcome

the CIS's initial decision that the joint I-751 petition contained false information. Thus, the IJ held that Duque was ineligible for an I-751 waiver of the joint filing requirements. Because the IJ found that Duque provided false testimony in both the hearing as well as his interview with the CIS, the IJ denied Duque's request for voluntary departure on the basis that Duque failed to show good moral character.[3]

## G.  The BIA's decision

Duque appealed the IJ's decision to the BIA. Duque argued that the CIS failed to conduct a second interview to determine whether his marriage was bona fide, and did not allow him to testify or submit evidence to support his claim. Duque took issue with the IJ's allegedly excessive questioning during the hearing and argued that this prevented proper cross-examination by his attorney. Further, he argued that the CIS erred when it denied his waiver request by simply incorporating by reference the reasoning stated in the agency's denial of his joint I-751 petition. Duque, however, did not appeal the IJ's finding that his witnesses were not credible, and that he had failed to provide

---

[3]  8 U.S.C. § 1229c(b)(1), requires, among other things, that in order to establish eligibility for voluntary departure the alien must have been a person of good moral character for at least five years immediately preceding the application for voluntary departure. Further, decisions concerning voluntary departure fall within the discretion of an Immigration Judge. Kandamar v. Gonzales, 464 F.3d 65, 69 (1st Cir. 2006) (stating that voluntary departure is a "privilege, not a right" and within the discretion of the IJ) (quoting Jupiter v. Ashcroft, 396 F.3d 487, 492 (1st Cir. 2005)) (internal quotation marks omitted).

sufficient evidence to support his petition.

On February 4, 2013, the BIA dismissed Duque's appeal from the IJ's decision denying his application for an I-751 waiver. The BIA rejected all of Duque's procedural arguments and concluded that Duque did not challenge the IJ's adverse credibility determinations, the findings relating to his failure to meet his burden of proof, or the denial of his request for voluntary departure. Duque's timely appeal followed.

## II. Discussion

We review the BIA's order under the deferential "substantial evidence" standard. Kinisu v. Holder, 721 F.3d 29, 34 (1st Cir. 2013). We will uphold the BIA's decision if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Syed v. Ashcroft, 389 F.3d 248, 251 (1st Cir. 2004) (internal quotation marks omitted) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). Accordingly, this court will not reverse factual determinations unless the record evidence would "compel a reasonable factfinder to reach a contrary determination." Kinisu, 721 F.3d at 34 (quoting Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008)) (internal quotation marks omitted). The credibility of a witness is a question of fact. McKenzie-Francisco v. Holder, 662 F.3d 584, 586 (1st Cir. 2011).

Also, "[t]his court has jurisdiction to review a final order of removal only if 'the alien has exhausted all

administrative remedies available to the alien as of right.'" Kinisu, 721 F.3d at 34 (quoting 8 U.S.C. § 1252(d)(1)). "The law of this circuit is clear that, if a petitioner fails to press an argument before the BIA, 'the petitioner has not exhausted [his] administrative remedies' as to that issue, which, 'in turn, forecloses this court from exercising jurisdiction over [the issue].'" Id. (quoting Chhay v. Mukasey, 540 F.3d at 5-6); see also Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006).

Under § 216(c)(4) of the INA, 8 U.S.C. § 1186a(c)(4), the Attorney General may remove the conditional basis of an alien's residency on the basis of a marriage to a U.S. citizen. The Attorney General may grant a waiver of the joint filing requirement to remove the conditional status if the alien establishes that "the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated." Id. The petitioner carries the burden of proving that the marriage was entered into in good faith. Kinisu, 721 F.3d at 34 (citing McKenzie-Francisco, 662 F.3d at 586-87).

In his petition for review, Duque argues that: (1) the IJ erred in determining that Duque failed to provide sufficient evidence in support of his I-751 waiver petition ; (2) the IJ erred in finding his witnesses not credible; (3) the IJ erred in denying his application for voluntary departure; and (4) the IJ and BIA erred by upholding the CIS's decision on his I-751 waiver petition

-12-

in violation of its own practice and procedures, resulting in a violation of Duque's due process rights. We address each of these arguments in turn.

## A. Duque's unexhausted arguments

The BIA found, correctly, that Duque failed to raise before it several challenges to the IJ's findings. Specifically, Duque failed to challenge before the BIA: the IJ's adverse credibility findings of Duque's testimony and that of his witnesses; the IJ's finding that Duque failed to satisfy his burden of proof showing that he entered into his marriage with Gladys in good faith; and the IJ's denial of his application for voluntary departure. Unfortunately for Duque, his failure to raise these challenges with the BIA deprives this court of jurisdiction to review them. Jing Qing Wu v. Holder, 705 F.3d 1, 3 (1st Cir. 2013); see also Sombah v. Mukasey, 529 F.3d 49, 52 (1st Cir. 2008) (stating that claims not presented to the BIA are not reviewable). We need go no further.

## B. Duque's due process claims

We do have jurisdiction to consider on of Duque's arguments: that the IJ and the BIA erred by allowing the CIS to adjudicate his I-751 waiver petition in violation of the CIS's own practice and procedure. Duque points to an internal memo released by then Acting Associate Director of the Domestic Operations Directorate of the CIS, according to which "[a]n IJ cannot review

an I-751 petition . . . . unless [the CIS] has first adjudicated the petition on its merits," and "if a waiver request petition follows the denial of a joint filed petition" then "the [CIS] will evaluate the new petition separately from the previous denial." Memorandum from Donald Neufeld, the Acting Associate Director, Domestic Operations Directorate, of the CIS, to Field Leaders in the CIS on the Proper Ways to Adjudicate I-751 Applications and I-751 Waiver Petitions (Oct. 9, 2009)(on file with the CIS).

Duque claims the agency erred when it incorporated by reference the reasoning used to deny his original I-751 petition in its denial of Duque's I-751 waiver petition. He asserts that this action violated his due process rights because it deprived him of his right to an adjudication on the merits -- including an interview -- of his I-751 waiver petition by the CIS, prior to a ruling from an IJ. Such a violation, according to Duque, requires us to vacate the BIA's decision and remand the case back to the CIS even if, in his own words, his "chances of obtaining a waiver are slim."

Yet, "before a petitioner in an immigration case may advance a procedural due process claim, he must allege some cognizable prejudice fairly attributable to the challenged process." Lattab v. Ashcroft, 384 F.3d 8, 20 (1st Cir. 2004) (citing Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 302 (5th Cir. 2002)); Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999)).

-14-

"Prejudice is an amorphous concept, and necessarily so, given the wide variety of facts that may arise." Kheireddine v. Gonzales, 427 F.3d 80, 85 (1st Cir. 2005). On this record, Duque's hearing before the IJ cured any potential prejudice Duque might have faced due to the alleged procedural transgression.

Even assuming that the failure to hold a second interview during the adjudication of Duque's I-751 waiver petition as suggested by an internal INS memo[4] could abridge a petitioner's due process rights -- a rather dubious proposition -- Duque has failed to show any cognizable prejudice. In his brief, Duque "does not assert that, if given the procedural safeguards he seeks, the result in this case would be any different." Ojeda-Terrazas, 290 F.3d at 302 (refusing to reach the merits of petitioner's due process claim where the petitioner failed to assert that the outcome of the case would have been different had proper procedure been followed). Indeed, given the utter lack of reliable evidence to support his case, it is unlikely the result would differ.

---

[4] We note that the memo "is intended solely for the training and guidance of [CIS] personnel in performing their duties relative to the adjudication of applications. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner." Memorandum from Donald Neufeld, the Acting Associate Director, Domestic Operations Directorate, of the CIS, to Field Leaders in the CIS on the Proper Ways to Adjudicate I-751 Applications and I-751 Waiver Petitions (Oct. 9, 2009)(on file with the CIS).

Instead of arguing he might have otherwise fared better, Duque contends that it was a violation of his due process rights for the CIS to fail to provide him with an interview in connection to his I-751 waiver petition.  He also protests he was not provided a point by point explanation as to why the evidence submitted in connection with that petition was insufficient to overcome the CIS's findings in its initial joint I-751 decision that Duque had provided false statements and information.

The record, however, reveals otherwise.  At the removal hearing, Duque was offered the opportunity to renew his request for a waiver as well as fully present his case by submitting documentary evidence in support of his request[5] --  a right Duque had, but failed to exercise.  See In re Herrera Del Orden, 25 I. & N. Dec. 589, 595 (BIA 2011) (stating that under 8 C.F.R. § 1216.5(f), when an alien seeks review in removal proceedings of a CIS decision denying his waiver application, the alien may renew his application before the IJ and present new evidence in support of his request, to satisfy his burden to establish eligibility for relief from removal).  Thus, the IJ did adjudicate Duque's petition on the merits, with the record that stood before it.

Further, the BIA found that the IJ fully addressed Duque's waiver request by carefully considering Duque's evidence

[5]  Duque acknowledges that he was required to submit documentary evidence of a shared life with Gladys to the IJ -- a task he failed to complete.  Additionally, Duque was unable to recall what evidence he submitted as part of his I-751 waiver petition.

-16-

and testimony in making its decision, and it did not base the decision solely on the prior denial of the joint I-751 petition. That the record was barren of any credible evidence in Duque's favor is a defect entirely of his own making. Thus, Duque is unable to sufficiently allege a cognizable prejudice, and as a result, he is unable to sustain a procedural due process claim. See Lattab, 384 F.3d at 20.

### III. Conclusion

All of Duque's arguments fail to carry the day. In sum, because Duque failed to challenge the IJ's findings below, and failed to sufficiently allege a cognizable prejudice to his due process rights, we agree with the BIA's denial of his petition. Accordingly, Duque's petition for review is **denied**.