**Not For Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

---

No. 14-1428

BIRENDRA KUMAR GURUNG,

Petitioner,

v.

LORETTA E. LYNCH,[*]
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, Thompson, and Barron,
<u>Circuit Judges</u>.

---

Stephanie F. Dyson and Cayer Dyson Law, P.C., on brief for petitioner.

Jeffrey R. Meyer, Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Joyce R. Branda, Acting Assistant Attorney General, Civil Division, and Stephen J. Flynn, Assistant Director, Office of Immigration Litigation, on brief for respondent.

---

August 12, 2015

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch is substituted for former Attorney General Eric H. Holder, Jr. as respondent.

**TORRUELLA, Circuit Judge.** Birendra Kumar Gurung is a native and citizen of Nepal who legally entered the United States on June 25, 2007, and received authorization to remain until October 1, 2007, pursuant to a H2-B non-immigrant visa. Gurung overstayed his visa and some three-and-a-half years later filed an application for asylum based on his alleged fear of returning to Nepal because of threats by Maoist communists. Gurung also applied for withholding of removal and protection under the United Nations Convention Against Torture ("CAT"). He now concedes removability but seeks judicial review of a final order entered by the Board of Immigration Appeals ("BIA"), which affirmed the denial of his requests by an Immigration Judge ("IJ"). For the reasons explained below, we deny the petition for review.

## I.  Background[1]

The following facts are taken from Gurung's testimony in support of his application before the IJ. See Chhay v. Mukasey, 540 F.3d 1, 4 (1st Cir. 2008). Gurung owned a grocery store when he was living in Nepal and is married with two children who still live there. In October 2000, Gurung joined the Nepalese Congress

---

[1] The recent history of Nepal is marked by a civil war. In 1996, following years of failed pro-democracy movements from groups opposing the ruling royal dynasty and seeking greater social equality, the Communist Party of Nepal ("Maoist") launched an armed struggle. The Government of Nepal and the Maoists engaged in an armed conflict that left thousands dead or missing. See generally U.N. High Comm'r for Human Rights, Nepal Conflict Report, 14-15 (Oct. 2012), http://www.ohchr.org/Documents/Countries/NP/OHCHR_ Nepal_Conflict_Report2012.pdf.

Party ("NCP") and became president of the Maghthana village committee, for which he recruited members and disseminated information about the party.  He testified that in 2004 he was working at his grocery store when four men came in and accused him of speaking against the Maoists at a public meeting of the NCP. The men beat him with a stick, but he never sought medical treatment.  Though he did go to a police station, they failed to take a report because the police were too busy fighting the Maoists.  Some days later, army soldiers came to his village and he told one of them that the Maoists were hiding in another village called Tiwari.  The soldiers then went after the Maoists, and Gurung later heard that two of the Maoists disappeared.

A year after these incidents, Gurung, who happened to be a board member for a high school at the time, heard news on the radio that the Maoists were taking over schools and forcing students and teachers to participate in their rallies.  His school, however, decided that they would defy the Maoists if they ever attempted such actions against them.  One day, the Maoists came to the school and beat Gurung with a bicycle chain.  He was taken to a health post where medical treatment was offered, but since his injuries were not severe, he left without receiving treatment.

Nine months later, Gurung received a phone call from someone identifying himself as a Maoist and telling Gurung to stop opposing the Maoists or they would kill him.

-3-

Fourteen months after the phone threat, Gurung was having dinner at home when a group of Maoists entered his house and asked him to join their cause. Unpersuaded, he argued that it was his fundamental right to choose a different political ideology. But the Maoists did not stop there. Gurung testified that they tied his hands behind his back and put a knife to his neck. They also threatened to cut his hand, throat, and tongue if Gurung continued to speak out against them.

Gurung had had enough. He went to Kathmandu, obtained a visa, and came to the United States. He did not apply for asylum upon his arrival because he hoped things would improve in Nepal after an election that was scheduled for 2008. In December 2010, Maoists captured his property and attacked his father. Gurung now fears the possibility of being harmed or persecuted if he is removed to Nepal.

## II. Procedural History

Having the benefit of both a BIA opinion and the IJ's decision in this case, we examine both. See Ahmed v. Holder, 765 F.3d 96, 99 (1st Cir. 2014) ("Because the BIA wrote separately while also approving the IJ's decision, our review is directed at both of those decisions."). The IJ denied Gurung's requests after holding a hearing in which she concluded that Gurung's application for asylum was time-barred because it was filed more than a year after Gurung arrived in the United States. Authority to apply for

-4-

asylum "shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Nevertheless, the IJ considered Gurung's application under the exceptions provided for late filings. See Chhay, 540 F.3d at 5 ("[A]n alien who files for asylum outside the one-year window may qualify by showing either extraordinary circumstances or changed country conditions."); Ferdinandus v. Gonzales, 504 F.3d 61, 62 (1st Cir. 2007) (explaining that an alien must show "changed or extraordinary circumstances excusing [his or] her delay").

Gurung argued that the recent attack against his father constituted changed circumstances. However, the IJ thought those events to be consistent with the conditions faced by the Petitioner in Nepal before his arrival in the United States, and thus did not represent changed country conditions. The BIA agreed with the IJ's determinations, but in reaching its conclusions, it declined to review the IJ's finding that Gurung's application for asylum was untimely, and thus its review did not require an analysis for changed country conditions pursuant to the exceptions to timely-filed petitions contained in 8 U.S.C. § 1158(a)(2). Instead, the BIA held on the merits that Gurung simply did not present sufficient evidence to meet his burden of proof for asylum, which

-5-

required him to establish that he had a well-founded fear of persecution if returned to Nepal.

The BIA also declined to address the IJ's credibility determinations, but agreed with her conclusions stating that even though Gurung submitted letters showing that he had participated in the NCP and favored democracy, there was no record of any of the incidents with the Maoists he had described in his testimony.[2] Because Gurung could not establish that he had been persecuted in the past, the BIA stated that he was not entitled to a presumption of future persecution and thus is ineligible for prospective relief.

With this backdrop, because Gurung had failed to meet the lower burden for asylum, the IJ and the BIA agreed that he also failed to establish the higher burden for withholding of removal or protection under the CAT, which required him to establish a clear probability of persecution or that it is more likely than not that he will be tortured upon returning to Nepal, respectively.

---

[2] The IJ concluded that -- even assuming that Gurung's testimony was credible -- he failed to meet his burden of proof by not providing sufficient corroborating evidence that was reasonably available or could be obtained. The IJ stated that she would "expect corroborating evidence" or "some mention by the [NCP] of Gurung's problems in Nepal because of his very participation, and involvement in that party." And the IJ expected that documentation of the seizure of Gurung's father's property would exist. Additionally, the IJ found that Gurung seemed unresponsive at times and that the Department of State Country Report for Nepal states that the Maoists were returning seized property as required by a Comprehensive Peace Agreement.

This petition for review ensued.

## III.  **Discussion**

We first review Gurung's application for asylum.[3]  In doing so, we must accept the BIA's and the IJ's findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary."  Sela v. Mukasey, 520 F.3d 44, 46 (1st Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)).  That is, we review the BIA's decision under a deferential substantial evidence standard.  Melhem, 500 F.3d at 81.  Additionally, legal arguments are reviewed de novo, but with deference to the agency's interpretation of its statutes and regulations.  Pulisir v. Mukasey, 524 F.3d 302, 307 (1st Cir. 2008).

To be eligible for asylum, an alien must establish that he is a refugee and that he is unwilling to return to his country "because of persecution or a well-founded fear of persecution on

---

[3]  There is no dispute that Gurung's application for asylum was not filed within one year of arriving in the United States.  However, while we generally lack jurisdiction under 8 U.S.C. § 1158(a)(3) to consider applications for asylum that are found by the agency to be time-barred, here the BIA expressly declined to address the untimely determination made by the IJ and instead considered the merits of Gurung's claims.  Cf. Oroh v. Holder, 561 F.3d 62, 67 (1st Cir. 2009) ("Both the IJ and the BIA concluded that no exceptions applied to excuse Oroh's untimely asylum application. We are without jurisdiction to review that conclusion."); Ferdinandus, 504 F.3d at 62 ("[W]e lack jurisdiction over Ferdinandus's asylum application because the BIA's timeliness determination is not reviewable."); Melhem v. Gonzales, 500 F.3d 78, 81 (1st Cir. 2007) ("[W]e lack jurisdiction over Melhem's asylum application because the IJ found his application time-barred and the BIA affirmed that determination.").

account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B). While asylum is discretionary, withholding of removal provides mandatory relief. See Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004).

To be eligible for withholding of removal, an applicant must prove that it is more likely than not that he will be subject to persecution on account of a protected ground should he be repatriated. Chhay, 540 F.3d at 6 (quoting Pulisir, 524 F.3d at 308); see also 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General may not remove an alien to a country if the . . . alien's life or freedom would be threatened . . . ."). Thus, for withholding of removal, Gurung must establish that his "life or freedom [will] be threatened in [Nepal] on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b); see also Sela, 520 F.3d at 46.

An applicant may carry this burden either by demonstrating past persecution or a likelihood of future persecution. See, e.g., Melhem, 500 F.3d at 81; see also 8 C.F.R. § 1208.16(b)(1)(i) ("If the applicant is determined to have suffered past persecution in [Nepal] . . . it shall be presumed that the applicant's life or freedom would be threatened in the future . . . ."). This is also referred to as a "clear probability" standard, which is more difficult to meet than the

-8-

"well-founded fear" standard for asylum. See I.N.S. v. Stevic, 467 U.S. 407, 425-26 (1984); Tay-Chan v. Holder, 699 F.3d 107, 111 (1st Cir. 2012) ("Withholding of removal imposes a more stringent burden of proof on an alien than does a counterpart claim for asylum, because the alien must demonstrate a clear probability of persecution, rather than merely a well-founded fear of persecution." (internal citations and quotation marks omitted)).

In petitions for asylum examined under the lower standard of proof, "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii).[4]  Indeed, corroboration may be required by an IJ, even where an applicant's testimony is deemed credible. See Soeung v. Holder, 677 F.3d 484, 488 (1st Cir. 2012).  When reviewing the decision of an IJ, we may not "reverse a determination . . . with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such

---

[4]  As for petitions for withholding of removal, an applicant's testimony may be sufficient to sustain this burden of proof without corroboration.  8 C.F.R. § 1208.16(b).  But, in evaluating the applicant's case, if the IJ determines that the alien's "testimony is not itself compelling[,] the absence of easily obtainable corroborating documentation can be the final straw."  Chhay, 540 F.3d at 6.

corroborating evidence is unavailable."  8 U.S.C. § 1252(b)(4); see also Chhay, 540 F.3d at 6.

Because claims for withholding of removal require a higher level of proof than claims for asylum, "[i]t follows that an alien who cannot prevail on a claim for asylum must also lose on a counterpart claim for withholding of removal." Seng v. Holder, 584 F.3d 13, 20 (1st Cir. 2009).

Here, the IJ stated that she listened to Gurung's testimony, which "on some occasions . . . was not responsive to the questions being asked of him."  Additionally, the only documentary evidence provided by Gurung was three letters from the NCP, none of which corroborated the incidents narrated in his testimony.  One of the letters stated that he was a chairperson from 2004 to 2006 and that he helped to promote democracy.  Another letter stated that he helped the NCP extend democracy, while the third letter stated that he was an activist of the NCP.  As to the allegations of property seizures, Gurung only presented a letter from his wife and a letter from his father.

On appeal, Gurung argues that he was not given formal notice that corroboration was required and should have been produced at the hearing and cites to Soeung in support of the proposition that the IJ was required to afford said notice. Furthermore, he asserts that, because the NCP is a political party, there is no reason to expect it to issue reports on crimes suffered

by its members. Such evidence, he claims, should be requested from law enforcement organizations. Finally, regarding the lack of corroborating evidence on the seized property, Gurung explains that his family did not report this to the police because the police do not get involved in disputes with the Maoists. In fact, he argues that he had attempted to report incidents to the police in the past, to no avail.

Contrary to Gurung's claim, Soeung does not specifically require that notice of reasonably available corroborating evidence be given to the petitioner. Instead, it states that before an applicant's failure to produce corroborating evidence can be used against him -- in the context of a petition for asylum -- "there must be explicit findings that (1) it was reasonable to expect the applicant to produce corroboration[,] and (2) the applicant's failure to do so was not adequately explained." Soeung, 677 F.3d at 488 (citing Chukwu v. Att'y Gen., 484 F.3d 185, 191-92 (3d Cir. 2007) (reviewing a denial of a timely petition for asylum)).

Because we conclude that the IJ did make the two findings required by Soeung, we are unpersuaded by Gurung's argument. The IJ considered and explained what was stated in each of the letters provided by Gurung, and described the kind of alternate documentary evidence and reports that Gurung could have reasonably produced to corroborate his testimony. The IJ added that "[t]he Court would expect corroborating evidence in the form of some mention by the

-11-

[NCP] of the respondent's problem in his country because of his very participation and involvement in that party." The IJ also found it "unpersuasive" that some of the incidents described by Gurung were never reported at all. She concluded that "[Gurung] failed to provide evidence that would corroborate his testimony and that he did not demonstrate that evidence could not reasonably be obtained." We are required to review these findings under a deferential standard. Melhem, 500 F.3d at 81.

As in Sela and Chhay, there is nothing in the record that compels us to conclude that it was not reasonable for Gurung to produce corroborating evidence to meet his burden, or that he could not have reasonably obtained any such corroborating evidence regarding the events he testified about -- especially considering that he was in communication with his political party, his father, and his wife. We are also unpersuaded by Gurung's justifications on appeal. The fact that the NCP is not a law enforcement agency does not explain why Gurung could not reasonably obtain from them, a third party, or an institution any evidence attesting to the veracity of the incidents described in his testimony. Thus, we agree that -- for purposes of asylum and withholding of removal -- Gurung failed to meet his burden of proof that he has a well-founded fear of being persecuted because he has been persecuted in the past, or that there is a clear probability that he will be persecuted.

-12-

This brings us to Gurung's request for relief under the CAT. To prevail, Gurung must prove that it is more likely than not that he will be tortured upon returning to Nepal. See 8 C.F.R. § 1208.18(a)(1); 8 C.F.R. § 1208.16(c)(2); Melhem, 500 F.3d at 82. A petitioner may establish this risk of future harm by presenting evidence that this would occur at the instigation of or by willful blindness by the law enforcement authorities of the country. See Chhay, 540 F.3d at 7.

As stated above, in reviewing the petitions for asylum and withholding of removal, we agree that Gurung failed to meet the burden of showing that he had been persecuted, that it is more likely than not that he will be persecuted upon his return, or that there is a clear probability that this will happen. Thus, we reach the same conclusion with regard to the CAT claim. Gurung did not prove that it is more likely than not that he will be tortured upon his return. Melhem, 500 F.3d at 82.

Furthermore, we agree with the Government's position that it is inconsistent for Gurung to argue that he failed to report the incidents described in his testimony because the police are ineffective in their fight against the Maoists. If the police are fighting against the Maoists in the first place, it cannot also be more-likely-than-not that they would instigate or acquiesce to torture activities by the Maoists. We note that this argument also contradicts some of Gurung's other claims that he and his family

-13-

failed to report to the police some of the incidents described in his testimony because the police do not get involved in disputes with the Maoists.

**IV.  Conclusion**

For the foregoing reasons, we agree with the BIA that Gurung failed to show that he is entitled to the relief requested. The petition for review is **denied**.