**XIU RONG CAO, Petitioner,**

v.

**BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES, Respondent.**

No. 07–3011–ag.

United States Court of Appeals, Second Circuit.

March 31, 2008.

Theodore N. Cox, New York, New York, for Petitioner.

Jeffrey S. Bucholtz, Acting Assistant Attorney General, Aviva L. Poczter, Senior Litigation Counsel, Nehal H. Kamani, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

PRESENT: Hon. RICHARD J. CARDAMONE, Hon. JOSÉ A. CABRANES, Hon. SONIA SOTOMAYOR, Circuit Judges.

### *SUMMARY ORDER*

Xiu Rong Cao, a native and citizen of the People's Republic of China, seeks review of a June 26, 2007 order of the BIA affirming the February 22, 2000 decision of Immigration Judge (IJ) Adam Opaciuch denying her application for asylum, withholding of removal, and Convention Against Torture (CAT) relief. *In re Xiu Rong Cao*, No. A70 908 805 (B.I.A. June 26, 2007), *aff'g* No. A70 908 805 (Immig. Ct. N.Y. City Feb. 22, 2000). We assume the parties' familiarity with the underlying facts and procedural history of the case.

The BIA decision under review resulted from a stipulation between the parties to remand for a reconsideration of petitioner's appeal in light of the evidence she had submitted bearing on conditions in China. The BIA had already rejected the IJ's adverse credibility finding, as well as petitioner's claim of past persecution based on economic harm, and her claim of future persecution based on illegal departure. Neither the government nor petitioner contested those aspects of the BIA's prior decision on remand, and the BIA reinstated them. The only issue addressed by the BIA, and the only issue raised before this Court now, is whether petitioner has a well-founded fear of persecution in China based on the two children she gave birth to in the United States.

This issue hinges on questions of fact—the likelihood of harm in China—that we review under the substantial evidence standard, treating the agency's findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), but nonetheless remanding for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Ying Zheng v. Gonzales*, 497 F.3d 201, 203 (2d Cir.2007). It is the latter situation that we confront in this case.

The BIA found the likelihood of petitioner being forcibly sterilized in China was insufficient to give rise to a well-founded fear of persecution. It based this finding almost entirely on the U.S. State Department's Profiles of Asylum Claims and Country Conditions in China (Profiles) released in 1998, 2005 and 2007. The 1998 Profile was already in the record and had been considered by the IJ. The 2005 Profile was offered by the parties on remand, and the 2007 Profile, released by the State Department after the parties submitted their briefs, is nowhere in the record but was administratively noticed by the BIA.

Even leaving aside the due process concerns created by the BIA's questionable use of administrative notice here, *see Burger v. Gonzales*, 498 F.3d 131, 134–36 (2d Cir.2007), the BIA simply mischaracterized the Profiles to such an extent that we are unsure it fully considered them. The BIA quoted the 1998 Profile as stating "couples that have children in the United States beyond the nominal limits and then return to China are, at worst, given modest fines." In its entirety, however, this sentence in the Profile reads, "*At least some* couples that have children in the United States beyond the nominal limits and then return to China are, at worst, given modest fines" (emphasis added). That "[a]t least some" couples avoid persecution, is perfectly consistent with other couples facing the "slight, though discernible, chance of persecution" that gives rise to a well-founded fear. *Diallo v. INS*, 232 F.3d 279, 284 (2d Cir.2000).

The BIA relied on the 2005 Profile for the propositions that (1) "no action will be

taken against students where both parents have resided overseas for at least a year and have two children when they return to China," and (2) "U.S. diplomats in China are not aware of any cases in which returnees from the United States were forced to undergo sterilization procedures on their return." The first of these propositions, however, is based on a regulation that has never been released publically. As the Profile goes on to explain, this makes it "difficult for the public to know and protect their rights against officials who may claim that the law is otherwise." Moreover, the Profile then specifically reports that U.S.-born children are *not* exempted from family planning laws when their parents, like petitioner's, lack residency rights outside of China. It highlights Fujian province—where petitioner is from—as a place where U.S.-born children would be treated as "unauthorized" under the law.

The second proposition drawn from the 2005 Profile, that U.S. diplomats are unaware of returnees being sterilized, does weigh against the likelihood of petitioner being harmed. To reach any conclusion about this risk, however, requires an evaluation of the rest of the Profile as well as the other evidence in the record, which the BIA did not conduct. The Profile states, for instance, that "China's birth planning policies retain harshly coercive elements in law and practice" and information about their implementation is "lacking" due "China's size and political culture, communications limitations, and a frequent lack of cooperation from Chinese authorities." That U.S. diplomats are unaware of returnees being sterilized, therefore, may tell us very little about the chances of this actually happening. This is particularly so given that diplomats continue to hear reports of physical coercion in general, including "the March 21, 2005 death of an unmarried 19-year-old woman during a forced late-term abortion," the June 2004 injury of a woman who "jumped out of a window in the operating room" to avoid being forcibly sterilized, and the 2004 suicide of a woman whose relatives were detained in "facilities designed to provide reeducation to those who violate birth planning guidelines."

Finally, the BIA relied on the 2007 Profile for the proposition that "children born overseas are not counted for birth planning purposes." Although the 2007 Profile is not in the record or, as far as we can tell, on the State Department's website, for the sake of efficiency we have located an unofficial version at http://pards.org/pevaluc.html (last visited February 20, 2008). Assuming the text of this version to be accurate, it is largely repetitive of the 2005 Profile, relying on the same unpublished Chinese regulation, and noting that children who are registered in China do count for birth planning purposes.

The only other analysis provided by the BIA is a critique of the affidavit of Dr. John Shields Aird that petitioner submitted before the IJ, and a conclusion that after reviewing the evidentiary submissions, the BIA finds "the Department of State Country Reports and Country Profiles more persuasive than the Aird Affidavit" and finds that petitioner "has not demonstrated a well-founded fear of forced sterilization or other related persecution if returned to China." There is no explanation of what weight the BIA gave to any of the evidence submitted by petitioner other than the Aird affidavit,[1] or of the numer-

---

1. This appears to include the Ting Jiang Town family planning regulations which discuss sterilization at page 281 of the record, although it is not clear whether these regula-

tions were submitted with petitioner's brief or somehow accidentally included in this record from another person's file. To the extent the BIA considered other new evidence submitted

ous exhibits attached to that affidavit. Although, as the BIA pointed out with regard to the affidavit itself, these exhibits focus on the 1980s and 1990s, this was not a reason to ignore them—particularly when the BIA was reviewing an IJ decision issued in 1999.

On other records we have upheld the agency's determination that U.S.-born children do not, on their own, give rise to a well-founded fear of persecution in China. *See Jian Xing Huang v. INS,* 421 F.3d 125, 128–29 (2d Cir.2005). In addition, the BIA has given more thorough analysis to this question in its own published opinions, again on other records. *See In re J–W–S–,* 24 I. & N. Dec. 185 (BIA 2007); *In re C–C–,* 23 I. & N. Dec. 899 (BIA 2006). Each case, however, stands on its own, and we find "significant error" in the BIA's failure to fully consider the evidence of country conditions in the record before us. *Yan Chen v. Gonzales,* 417 F.3d 268, 272–73 (2d Cir.2005). We also see no basis on which we might confidently predict the BIA would reach the same decision notwithstanding this error. *See Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 335 (2d Cir.2006). We therefore remand to allow the agency to reach a new finding as to the likelihood of petitioner being persecuted if returned to China. If the BIA determines that additional evidence must be considered in order to render a decision on this issue, it should remand to the IJ for this purpose.

For the foregoing reasons, the petition for review is GRANTED and the case is REMANDED for further proceedings consistent with this decision. As we have completed our review and vacated the or-

der of removal, petitioner's motion for a stay of removal is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).

---

on remand, it should have considered these regulations as well if they were in fact part of petitioner's submissions.

