# United States Court of Appeals
## For the First Circuit

No. 08-2041

ZHOU ZHENG,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD
OF IMMIGRATION APPEALS

Before

Torruella, Selya and Tashima,[**]
Circuit Judges.

Stephanie F. Dyson and Dyson Law, P.C. on brief for
petitioner.
Michael F. Hertz, Acting Assistant Attorney General, Civil
Division, Terri J. Scadron, Assistant Director, and Siu P. Wong,
Trial Attorney, Office of Immigration Litigation, on brief for
respondent.

June 30, 2009

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric
H. Holder, Jr. has been substituted for former Attorney General
Michael B. Mukasey as the respondent.

[**]Of the Ninth Circuit, sitting by designation.

**SELYA**, **Circuit Judge**. The petitioner, Zhou Zheng, is a Chinese national. She seeks judicial review of a final order of the Board of Immigration Appeals (BIA) that affirmed both an order of removal and the concomitant denial of a cross-application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). Concluding, as we do, that the BIA's decision is supported by substantial evidence, we deny the petition for judicial review.

The facts are straightforward. The petitioner entered the United States illegally in December of 1998. While living in Massachusetts, she married and bore two children (one in 2002 and the other in 2005).

On January 12, 2005, the petitioner applied for asylum and withholding of removal.[1] Following an asylum interview, federal authorities denied her application and referred the matter of her status to the immigration court. See 8 U.S.C. § 1227(a)(1)(B). Removal proceedings began.

The petitioner appeared in the immigration court on October 24, 2006. She conceded removability but cross-applied for asylum, withholding of removal, and protection under the CAT.

_____

[1] An alien ordinarily must file for asylum within one year of her arrival in the United States. See 8 U.S.C. § 1158(a)(2)(B); Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007). Here, however, the immigration judge found that the petitioner qualified for the "extraordinary circumstances" exception to this rule. See 8 U.S.C. § 1158(a)(2)(D). The respondent has not challenged that determination.

The petitioner testified that, even though she was unwed and had no children at the time, she left China in order to avoid that country's repressive family planning restrictions. Now that she had two children, she feared that a return to her homeland would lead either to forcible sterilization or some disadvantage to her children. In support, the petitioner presented affidavits from several family members who claimed to have been subjected to involuntary abortions or sterilization. In this regard, the petitioner testified that her mother was forcibly sterilized following the birth of her third child twenty-five years earlier. She added, through testimony and other evidence, that her cousin's wife was sterilized in 1986 after having two children; that a different cousin's wife was sterilized in 2004 after having two children; that her sister-in-law's husband was forcibly sterilized in 1997 after siring two children;[2] and that her sister was forced to undergo an abortion in 2000. Finally, the government introduced a 2005 State Department country conditions report (2005 Profile).

This compendium of evidence did not impress the immigration judge (IJ). In his view, the petitioner had established a genuine fear of forced sterilization, but she had failed to establish that this subjective fear was objectively

_____

[2] All of the children mentioned in this paragraph were born in China.

reasonable. Consequently, the IJ denied the petitioner's requests for relief and ordered her removal.

The petitioner appealed to the BIA, arguing that the 2005 Profile showed that Chinese citizens returning to their homeland were given "no special treatment" in terms of family planning policies. She also argued that simply because American diplomats were "unaware" of any forced sterilizations imposed upon returnees with children born in the United States did not mean that such incidents did not occur.

The BIA affirmed the IJ's decree in all respects. It held that the petitioner had not presented "specific and individualized evidence" sufficient to show that she would likely be forced to undergo sterilization either in China generally or in her hometown of Changle City (in Fujian Province) specifically. It further held that the petitioner had not shown that "any economic sanctions that may be imposed on her would rise to the level of persecution."

This timely petition for judicial review followed. We have jurisdiction under 8 U.S.C. § 1252(a)(1).

In removal cases, judicial review ordinarily focuses on the decision of the BIA. Stroni v. Gonzales, 454 F.3d 82, 86 (1st Cir. 2006). That approach obtains when the BIA has conducted an independent evaluation of the record and rested its decision on a self-generated rationale. See Acevedo-Aguilar v. Mukasey, 517 F.3d

-4-

8, 9 (1st Cir. 2008). This is such a case. The devoir of persuasion abides with the petitioner. See Pulisir v. Mukasey, 524 F.3d 302, 308 (1st Cir. 2008); see also 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a).

The applicable standard of review is the familiar substantial evidence standard. See, e.g., Sok v. Mukasey, 526 F.3d 48, 52 (1st Cir. 2008). Absent an error of law,[3] this "highly deferential" standard results in a reversal only if the record would compel a reasonable factfinder to reach a different outcome. López de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007); see Pan v. Gonzales, 489 F.3d 80, 85 (1st Cir. 2007). In conducting this tamisage, a reviewing court accepts the findings of fact on which the agency's determination rests so long as those findings are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

To establish eligibility for asylum, an alien must demonstrate either past persecution or a well-founded fear of future persecution due to race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.16(b)(2); see also Rivas-Mira v.

---

[3] "Abstract legal propositions are reviewed de novo, with some deference to the agency's reasonable interpretation of statutes and regulations within its ken." Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008). There is no error of law apparent here.

Holder, 556 F.3d 1, 4 (1st Cir. 2009).  Because the petitioner does not claim to have been the victim of past persecution, she must prove that she has a well-founded fear of future persecution based on one of the five statutorily protected grounds enumerated above. See 8 U.S.C. § 1158(b)(1); see also Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004).

Proof of a well-founded fear entails a showing that the fear is both subjectively felt and objectively reasonable.  Jiang v. Gonzales, 474 F.3d 25, 30 (1st Cir. 2007).  A well-founded fear of forced abortion or sterilization is considered a qualifying fear of persecution based on political opinion.  8 U.S.C. § 1101(a)(42); Xie Mei Zheng v. Gonzales, 475 F.3d 30, 34 (1st Cir. 2007).

The BIA concluded that the petitioner had not proven that she had this well-founded fear of future persecution.  The petitioner demurs; she offers several reasons why the BIA's conclusion was unsupported by substantial evidence.  To her way of thinking, the BIA misinterpreted the 2005 Profile, failed to give adequate weight to precedent, and abused its discretion in referring to the State Department's 2007 country conditions report (2007 Profile) without pausing to take administrative notice thereof.  We examine these claims sequentially.

In support of her contention that the BIA did not properly weigh the evidence, the petitioner relies heavily on the unpublished decision in Cao v. Bureau of Citizenship and

-6-

Immigration Services, 272 F. App'x 14 (2d Cir. 2008).  In that non-precedential opinion, see 2d Cir. R. 32.1(b), the court of appeals remanded because the BIA had "mischaracterized" the 2005 Profile, Cao, 272 F. App'x at 15.  But Cao is, at best, only tangentially relevant to the case at hand.  The BIA's error there was case-specific, and the court of Cao's origin — the Second Circuit — subsequently concluded that the 2005 Profile furnishes no concrete evidence that sterilization is forced upon citizens returning to Fujian Province with American-born children.  See Shao v. Mukasey, 546 F.3d 138, 164 (2d Cir. 2008) (noting that "[t]he significance of the [2005] report is highlighted by the fact that, despite the voluminous documentary records developed in these . . . cases, none of the petitioners points us to evidence of any person being forcibly sterilized on removal to China based on having two children"); see also Huang v. U.S. INS, 421 F.3d 125, 128-129 (2d Cir. 2005).

More importantly, the significance of Cao pales in comparison to our own circuit precedent (which is, of course, binding on this panel).  We recently adjudicated a petition for review embodying facts nearly identical to those presented here.  See Yen Zheng Zheng v. Mukasey, 546 F.3d 70 (1st Cir. 2008).  Zheng, not Cao, is the beacon by which we must steer.  See United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991) (explaining

that, within a multi-panel circuit, panels ordinarily are bound by prior panel decisions closely on point).

Zheng, like this case,[4] involved a Chinese woman from Fujian Province who was the mother of two American-born children. 546 F.3d at 71. There, as here, the alien claimed a well-founded fear of future persecution in the form of forced sterilization. Id. at 72. There as here, she alleged that the BIA had misread the country conditions reports. Id. at 72-73. There, as here, the alien relied mainly on anecdotal evidence to support her claim.[5] Id. at 72. The BIA denied relief and affirmed an order of removal. We upheld that decision, ruling that nothing in the record compelled a contrary conclusion. Id. at 73.

The petitioner labors to distinguish Zheng. Her most loudly bruited claim is that the case arose in a different procedural posture; the alien was seeking an order for reinstatement of her appeal. See id. at 71; see also Liu v. Mukasey, 553 F.3d 37, 39 n.1 (1st Cir. 2009) (discussing standard of review for reinstatement of appeal). That is true, but it is only half of the story. In Zheng, the court found expressly that

---

[4] The two cases are about two different (unrelated) women who happen to share the same name.

[5] By and large the evidence presented there was stronger than that presented here. For example, it included documents from Fujian Provincial Population and Family Planning Commission and an affidavit from an expert on Chinese population control policy. Zheng, 546 F.3d at 71. No comparable evidence was tendered in this case.

-8-

the alien had not "establish[ed] a prima facie case for the [granting of asylum]." 546 F.3d at 73. This was so, the court explained, because the evidence did not call into legitimate question the BIA's determination that, among other things, she lacked a well-founded fear of future persecution. Id.

This finding makes Zheng directly relevant to the instant case. It is clear from Zheng, as we said in our earlier case, that when an alien has adduced nothing more than "background information [that does] not in any way shed light on this individualized issue," nothing compels a reviewing court to overturn the decision of the BIA. Chhay v. Mukasey, 540 F.3d 1, 8 (1st Cir. 2008). That principle applies four-square in the instant case.

The petitioner's other effort to distinguish Zheng is equally unavailing. That effort centers on a boast that her proof is more cogent because, unlike in Zheng, she corroborated her anecdotal evidence of coercive family planning tactics. This rodomontade misses the point: the petitioner's corroborating evidence does not verify her asseveration that returnees with American-born children are routinely subjected to coercive family planning practices. Consequently, that evidence is of limited utility. See Lin v. Holder, No. 07-1853, 2009 WL 1220783, at *5-6 (4th Cir. May 6, 2009) (unpublished).

This brings us to the petitioner's second claim of error: that the BIA turned a blind eye to precedent. In this regard, the

petitioner relies on three cases: Cao, Li v. U.S. Atty. Gen., 488 F.3d 1371 (11th Cir. 2007), and Yang v. Gonzales, 427 F.3d 1117 (8th Cir. 2005). This reliance is mislaid.

The fundamental flaw in the petitioner's position is that the cited cases, whether viewed singly or in combination, do not usurp the primacy of this court's opinion in Zheng. See Wogan, 938 F.2d at 1449. To cinch matters, none of the cited cases is materially similar to this case.

We previously have distinguished Cao and need not repastinate that ground. Thus, we start with Li, which involved a petition to review the denial of a motion to reopen. The Eleventh Circuit's decision turned on the alien's proffer of specific evidence anent family planning practices in her village. 488 F.3d at 1375. So too in Yang; the court granted relief based on particularized evidence demonstrating that Yang's and her husband's families had been specifically targeted by government hierarchs for forced sterilization and abortions. 427 F.3d at 1121-22.

Evidence such as that presented in Li and Yang is conspicuously absent from the record here. The absence of such evidence makes a dispositive difference.

The petitioner's final argument is different in character. As said, the BIA based its decision to deny asylum on information contained in the 2005 Profile and the absence of any specific evidence showing that Chinese repatriates with American-

-10-

born children were being forcibly sterilized or otherwise persecuted. But the BIA also mentioned the 2007 Profile in a footnote without formally taking administrative notice of that report (which had not been offered into evidence before the IJ). The petitioner asserts that the BIA's decision must be set aside because its actions in this respect offend due process.

We review a procedural due process claim of this type de novo. See, e.g., Pulisir, 524 F.3d at 311; Teng v. Mukasey, 516 F.3d 12, 17 (1st Cir. 2008). To prevail, a complainant must, among other things, show prejudice. Pulisir, 524 F.3d at 311. In this context, prejudice equates with a showing that "an abridgement of due process is likely to have affected the outcome of the proceedings." Id.

Admittedly, it would have been preferable for the BIA either to have eschewed any mention of the 2007 Profile or to have taken administrative notice of it. Despite the BIA's bevue, however, there was no apparent harm. The 2005 Profile and the 2007 Profile do not differ materially in content, see Cao, 272 F. App'x at 16 (terming the 2005 and 2007 Profiles "largely repetitive"), and the former document was properly before the BIA. In any event, the 2007 Profile had nothing to do with, and thus could not have affected the BIA's evaluation of, the petitioner's individualized situation.

Under these circumstances, we conclude, without serious question, that the error neither prejudiced the petitioner nor affected the outcome of the proceeding. Accordingly, it affords no principled basis for setting aside the BIA's decision. See Shao, 546 F.3d at 168.

That ends this aspect of the matter. Because the BIA gave consideration to the evidence as a whole, made supportable findings, sufficiently explained its thought process, and committed no prejudicial error in the handling of the evidence, its decision to deny the application for asylum is perforce supported by substantial evidence. See Chhay, 540 F.3d at 8; Pan, 489 F.3d at 87.

Given this holding, the petitioner's entreaty that we reverse the BIA's decision to deny withholding of removal is easily dispatched. To succeed on that claim, the petitioner had to establish that, if repatriated, she would more likely than not face persecution on account of a statutorily protected ground. 8 U.S.C. § 1231(b)(3)(B)(i). This standard is more demanding than the standard for asylum. See Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005); Makhoul, 387 F.3d at 82. It follows inexorably that because the petitioner's asylum claim fails, her withholding of removal must fail as well.

We need go no further.[6]  For the reasons elucidated above, we deny the petition for judicial review.


**So Ordered**.

---

[6] The petitioner withdrew her CAT claim in her reply brief. Thus, we have no occasion to address that claim.