[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10863

_____

ASHRAF ABDULKARIM-ALI ALKOTOF,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A087-896-482

_____

_____

2                    Opinion of the Court                    22-10863

No. 22-10872

_____

ASHRAF ABDULKARIM-ALI ALKOTOF,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A087-896-482

_____

Before BRANCH, GRANT, Circuit Judges, and CALVERT,* District
Judge.

BRANCH, Circuit Judge:

Ashraf Abdulkarim-Ali Alkotof seeks review of the Board of
Immigration Appeals's ("BIA") dismissal of his appeal of an

_____

* Honorable Victoria Calvert, United States District Judge for the Northern
District of Georgia, sitting by designation.

Immigration Judge's ("IJ") decision ordering him removed to Yemen, as well as the denial of his request for remand.   On appeal, he contends that the BIA erred in: (1) refusing to remand his case to the IJ to consider his application for cancellation of removal; and (2) affirming the IJ's denial of his request for administrative closure or, in the alternative, a continuance to allow more time for the adjudication of his petitions pending before the U.S. Citizenship and Immigration Services ("USCIS").

We conclude that we lack jurisdiction over the BIA's denial of Alkotof's motion to remand and that the BIA did not abuse its discretion in denying his request for an administrative closure or a continuance.  Accordingly, after careful review, we affirm in part the BIA's decision and dismiss in part Alkotof's petition for review.

## I.    Background

Alkotof, a native and citizen of Yemen, entered the United States in January 2006 on a B1/B2 visa as a non-immigrant.    He was allowed to remain in the United States until July 2006 but overstayed.

In 2010, the Department of Homeland Security ("DHS") issued Alkotof a notice to appear ("NTA"),[1] alleging that he had remained in the United States for a period longer than permitted

---

[1] The NTA was originally filed with the immigration court in Memphis. Alkotof sought and was granted a change in venue to the immigration court in Atlanta.

and was subject to removal under 8 U.S.C. § 1227(a)(1)(B).[2]  In his initial pleading in his removal proceeding, Alkotof admitted to the factual allegations and conceded that he was subject to removal as charged.      Still, Alkotof stated that his United States citizen spouse, Tiffany Alfano, had filed a Form I-130 petition on his behalf, which, if approved, would allow him to apply for an I-485 application for adjustment of status[3] under 8 U.S.C. § 1255.[4]  *See* 8

---

[2] 8 U.S.C. § 1227(a)(1)(B) provides that "[a]ny alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked . . . , is deportable."

[3] A qualifying United States citizen may file an I-130 petition on behalf of an alien relative who wishes to immigrate or remain in the United States to establish the existence of a legal relationship between the petitioner and the alien beneficiary. *See* 8 U.S.C. § 1154(a)(1)(A)(i) (providing that "any citizen of the United States claiming that an alien is entitled to . . . an immediate relative status . . . may file a petition with the Attorney General for such classification"); *see also Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1194 n.6 (11th Cir. 2008) ("The purpose of an I–130 [petition] is to establish that there is a legal relationship between the petitioner and the beneficiary of the I–130, such that the beneficiary is entitled to apply for a change or adjustment of status based on that legal relationship."). If the I-130 petition is approved, the alien may then file an I-485 application for adjustment of status under 8 U.S.C. § 1255. *See* 8 C.F.R. § 245.2(a)(2)(i)(B); 8 U.S.C. § 1255(a).

[4] 8 U.S.C. § 1255(a) provides that an alien's status

> may be adjusted by the Attorney General . . . to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the

22-10863                Opinion of the Court                    5

C.F.R. § 245.2(a)(2)(i)(B); 8 U.S.C. § 1255(a).

At a hearing in March 2011, the IJ sustained the charge of removal.    Alkotof then conveyed that he would submit an adjustment of status application with Form I-485 under 8 U.S.C. § 1255 once Alfano's I-130 petition was approved.    The IJ then continued Alkotof's removal proceedings until later in 2011.

In November 2011, USCIS denied the I-130 petition Alfano had filed on Alkotof's behalf because Alfano did not respond to a notice about a rescheduled interview or appear for said interview.

Alkotof divorced Alfano in January 2013 and married Hajer Ali Yehia, a citizen of the United States, in February 2013.  In May 2013, Yehia also filed an I-130 petition on Alkotof's behalf, which was later approved.    Thereafter, at some point toward the end of 2015, Alkotof filed a I-485 adjustment of status application.

By August 2016, the IJ had continued the removal proceedings three more times due to changes in counsel, Alkotof's pending adjustment of status application, and the processing of Alkotof's motion to "terminate the [removal] proceedings."  When Alkotof appeared before the IJ again in August 2016, DHS stated that, while Yehia's I-130 petition had been approved at first, officials had revoked it based on a determination that Alkotof had

---

United States for permanent residence, and (3) an immigrant
visa is immediately available to him at the time his application
is filed.

committed fraud under 8 U.S.C. § 1154(c),[5] through his earlier marriage to Alfano.[6]   DHS noted that Alkotof had appealed the revocation of Yehia's approved I-130 petition and that the appeal remained pending.    The IJ decided to continue Alkotof's proceedings for a fifth time to "status check the matter" at a later date when the court "should know more[.]"

In November 2016, the IJ continued the proceedings for a sixth time to allow USCIS more time to adjudicate Alkotof's appeal of Yehia's revoked I-130 petition.

In May 2018, Alkotof again appeared before the IJ.  The appeal of Yehia's revoked I-130 petition remained pending. Alkotof told the IJ that he had applied in 2017 for a U-Visa as "a victim of criminal activity," which had also not yet been adjudicated.  *See* 8 U.S.C. § 1101(U)(i)(I).  Alkotof asked the IJ, "at [the IJ's] own discretion," to "admin[istratively] close the proceedings" while his U-Visa application was being processed. Alternatively, he stated that the IJ could "just continue the [case] until such time [as] the U-[V]isa [was] processed and approved." Alkotof also requested that the IJ proceed with his adjustment of

---

[5] 8 U.S.C. § 1154(c) prohibits the approval of a visa filed on behalf of an alien who entered into a marriage that the Attorney General determines to be "for the purpose of evading the immigration laws."

[6] USCIS determined that Alkotof committed fraud through his marriage to Alfano because, after interviewing Alfano and her father, USCIS concluded that Alfano and Alkotof resided together only as friends.

status application.[7]

DHS, in turn, opposed administrative closure or any further continuance in light of the marriage-fraud determination and the revocation of Yehia's I-130 petition. But it did not oppose another continuance "to determine the status of the appeal" of Yehia's revoked I-130 petition. DHS also argued that revocation of Yehia's I-130 petition precluded consideration of any application for adjustment of status. The IJ continued the proceedings a seventh time to allow more time for Alkotof's appeal of Yehia's revoked I-130 petition.

At a final removal hearing in October 2018, Alkotof again requested that his I-485 adjustment of status application be adjudicated based on Yehia's (still revoked) I-130 petition, which he viewed as "still pending" because of the related appeal. DHS argued that, with Yehia's I-130 petition revoked on the grounds of prior marriage fraud, the IJ could not adjudicate the I-485 adjustment of status application because "no relief [was] available before the Court." It added that Alkotof could later request to reopen the case or pursue consular processing if Yehia's I-130 approval ultimately got reinstated. DHS asked the IJ to enter an order for voluntary departure and deny Alkotof's request for a continuance.

---

[7] While the parties discussed whether to have a hearing on the I-485 application for adjustment of status, it does not appear that a copy of the I-485 application is in the record.

The IJ concluded that the absence of any approved I-130 petition precluded it from proceeding with the I-485 adjustment of status application.  Furthermore, the IJ explained that the appeal of Yehia's I-130 petition would no longer forestall proceedings because the case already had been pending for eight years.    The IJ also said that Alkotof's U-Visa petition would not delay proceedings because any determination on the U-Visa was "not immediately of any benefit" to Alkotof because it was "years away," and Alkotof could later pursue "consular process[ing] outside of the United States."   Thus, the IJ concluded that "[t]here [wa]s no . . . immediately available relief" the court could grant Alkotof. Accordingly, the IJ ordered Alkotof removed to Yemen.

Alkotof administratively appealed to the BIA.    He then filed a motion to remand to pursue an application for cancellation of removal with the IJ under 8 U.S.C. § 1229b(b)(1).[8]  Relevant to his

---

[8] 8 U.S.C. § 1229b(b)(1) provides:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—
>
> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;

appeal in this Court, Alkotof argued two main points before the BIA. First, with regard to the motion for remand, Alkotof argued that in light of his changed family circumstances—namely his son's diagnosis with autism spectrum disorder and the lack of any other family support to help his wife care for their three children—his removal would result in exceptional and extremely unusual hardship, and he would be eligible for cancellation of removal.[9] Second, Alkotof argued that the IJ "erred by declining to administratively close or, in the alternative, continue the[] proceedings to permit the adjudication of the petitions pending before USCIS," and the decision should be reversed.

---

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

[9] Alkotof's motion to remand also sought to pursue an application for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture ("CAT"). Because, when discussing the motion to remand on appeal in this Court, Alkotof only addresses the BIA's denial of his application for cancellation of removal, he has abandoned his arguments pertaining to the application for asylum, withholding of removal, and protection under the regulations implementing CAT. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (stating an appellant who fails to argue an issue in his brief abandons it). Accordingly, when discussing the motion for remand, we address only the application for cancellation of removal.

The BIA denied Alkotof's motion to remand and dismissed his appeal. In denying his motion for remand, the BIA found that remand was not appropriate. The BIA noted that Alkotof needed to "demonstrate that he warrants a grant of cancellation of removal in the exercise of discretion." But it said that "[a] finding that [Alkotof] ha[d] attempted or conspired to enter into a marriage for the purpose of evading the immigration laws at the least [was] a serious negative discretionary factor." Further, it found that Alkotof had not presented sufficient evidence rebutting the fraud finding, "such as a personal statement or evidence from the prior visa petition establishing the bona fides of that prior marriage." Because it concluded that Alkotof "ha[d] not sufficiently demonstrated prima facie eligibility for cancellation of removal," the BIA denied his motion.

With regard to Alkotof's claim that the IJ erred in failing to administratively close his case or otherwise continue the proceedings, the BIA addressed each of the pending applications: (1) the I-485 adjustment of status application, and relatedly, the appeal of Yehia's revoked I-130 petition, and (2) the pending U-Visa petition. First, regarding the I-485 adjustment of status application, the BIA noted that Yehia's I-130 petition had been revoked, and it took administrative notice that Alkotof's appeal of that revocation had since been dismissed for lack of standing.[10] Thus, the BIA

_____

[10] The BIA explained that the appeal of Yehia's I-130 visa petition revocation had been dismissed for lack of standing on April 4, 2021. The BIA provided no

22-10863              Opinion of the Court                    11

concluded, Alkotof was ineligible for an adjustment of status because he did not have an immigrant visa "immediately available to him at the time his application was filed." It also explained that "[a]t the time of the final hearing," the IJ could not have administratively closed Alkotof's removal proceedings "in light of the Attorney General's decision in *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (A.G. 2018)." It acknowledged that the Attorney General had later overruled *Castro-Tum* during the pendency of Alkotof's appeal, again allowing IJs and members of the BIA to administratively close cases[11] (citing *Matter of Cruz-Valdez,* 28 I. &

---

accompanying citation, and the record contains no additional information regarding this dismissal.

[11] The approach to administrative closures has shifted considerably since 2012. Prior to 2012, BIA precedent reflected that an IJ could only grant administrative closure where both parties supported the request. *In Re Gutierrez-Lopez*, 21 I. & N. Dec. 479, 480 (BIA 1996). But beginning in 2012, an IJ and BIA members were permitted to administratively close a removal proceeding even if the action was opposed. *Matter of Avetisyan*, 25 I. & N. Dec. 688, 693–94 (BIA 2012).

In 2018, in *Matter of Castro-Tum*, the Attorney General held that IJs and members of the BIA do not have the general authority to suspend indefinitely immigration proceedings by administrative closure "except where a previous regulation or settlement agreement has expressly conferred [such authority]." 27 I. & N. Dec. 271, 281, 283, 285 (A.G. 2018).

Then in 2021, in *Cruz-Valdez*, the new Attorney General "determined that it [wa]s appropriate to overrule [the prior] Attorney General['s] . . . opinion in *Castro-Tum*" because it "departed from long-standing practice" and had been rejected by some courts. 28 I. & N. 326, 328–29 (A.G. 2021).

Since 2021, administrative closure has remained a permitted discretionary

N. Dec. 326 (A.G. 2021)).    But the BIA concluded that "[e]ven if . . . the [IJ] improperly denied a further continuance or administrative closure, [Alkotof] ha[d] not demonstrated how he was prejudiced" by the decision.    Rather, because Alkotof "remain[ed] ineligible for adjustment of status," he could not show prejudice.

Second, as to the U-Visa application, the BIA concluded that Alkotof "also ha[d] not shown prejudice in the context of seeking a U-[V]isa."  The BIA noted that, "[d]espite the passage of several years, [Alkotof] ha[d] not presented evidence as to whether that application ha[d] been approved" and observed that it "remain[ed] speculative that it [would] be adjudicated favorably in a timely manner."    In addition, the BIA noted that Alkotof could continue to pursue his U-Visa application even after the entry of the final order of removal.  Accordingly, the BIA dismissed Alkotof's appeal.

Alkotof timely filed a petition for review.

## II.    Standard of Review

In the immigration context, we construe a motion to remand that seeks to introduce new evidence as a motion to reopen. *Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008).  And we review both the denial of a motion to remand and the denial of a motion for continuance for abuse of discretion.  *Id.* at 1285–86. Because administrative closure is a docket management tool that

---

procedural tool.

falls within the realm of discretionary decisions such as motions to reopen and motions for continuance, we also review the decision to deny administrative closure for abuse of discretion. *See In Re Gutierrez-Lopez*, 21 I. & N. Dec. 479, 480 (BIA 1996) (explaining how administrative closures may be used), *overruled on other grounds by Matter of Avetisyan*, 25 I. & N. Dec. 688 (BIA 2012).

Under the abuse of discretion standard in immigration cases, "[j]udicial review of denials of discretionary relief . . . is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Garcia-Mir v. Smith*, 766 F.2d 1478, 1490 (11th Cir. 1985) (quotations omitted).

We review our jurisdiction *de novo*, *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 866 (11th Cir. 2018), and we consider jurisdictional issues *sua sponte*, *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 n.17 (11th Cir. 2020) (en banc), *aff'd sub nom. Patel v. Garland*, 596 U.S. 328 (2022).

"Because the BIA did not expressly adopt the IJ's decision or rely on its reasoning, we will review only the BIA decision." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016); *see Chacku*, 555 F.3d at 1285 ("When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision.").

## III.    Discussion

On appeal, Alkotof argues that the BIA erred in: (1) refusing to remand his case to the IJ to consider whether he was entitled to

cancellation of removal; and (2) affirming the IJ's denial of his request for administrative closure or another continuance. We address each argument in turn.

### 1. Motion to Remand

First, we address Alkotof's motion to remand. On appeal, Alkotof raises a constitutional and a legal challenge to the BIA's denial of his motion to remand to seek cancellation of removal. In his constitutional argument, Alkotof asserts that the BIA denied him "his constitutional right of due process" by "prevent[ing] his application for cancellation from being properly adjudicated" by the IJ. As for his legal argument, Alkotof asserts that the BIA committed legal error when it concluded in the first instance that he had not demonstrated that he warranted a grant of cancellation of removal. Rather, Alkotof argues that the BIA, as a reviewing body, should have remanded his case so that the IJ, as the initial decision-maker, could consider whether he was entitled to cancellation of removal.

We generally lack jurisdiction to review a discretionary judgment regarding cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(i);[12] *see Patel*, 596 U.S. at 347 (holding that "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under . . . the . . . provisions enumerated in § 1252(a)(2)(B)(i)," one of which is cancellation of

---

[12] The statute provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b," which addresses cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(i).

removal).[13] But we may review "constitutional claims or questions of law raised" by a petitioner.  8 U.S.C. § 1252(a)(2)(D); *see Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 549 (11th Cir. 2011) (stating that § 1252(a)(2)(D) "permits the courts to review 'constitutional claims or questions of law' notwithstanding the jurisdiction-stripping provision[] of § 1252(a)(2)(B)").[14]  Upon review, we conclude that we do not have jurisdiction to review Alkotof's constitutional or legal argument.

We first evaluate Alkotof's constitutional argument.  To invoke our jurisdiction, a constitutional claim must be "colorable"—that is, it must "have some possible validity." *Patel*, 971 F.3d at 1275 (quotations omitted).  Alkotof's constitutional claim, a Fifth Amendment due process claim, fails to meet this threshold.  Any such due process claim must "assert a deprivation of a constitutionally protected liberty or property interest." *Bing Quan Lin*, 881 F.3d at 868–69. And "there is no constitutionally protected interest in purely discretionary forms of relief." *Id.* at 869 (quotations omitted); *see also Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 (11th Cir. 2008) (stating that "the failure to receive relief

---

[13] As explained, we construe Alkotof's motion to remand (which seeks to introduce new evidence) as a motion to reopen. *Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008).  We have said that "[w]hen we lack jurisdiction to consider an attack on a final order of removal, we also lack jurisdiction to consider an attack by means of a motion to reopen." *Butalova v. U.S. Att'y Gen.*, 768 F.3d 1179, 1183 (11th Cir. 2014).

[14] We note that the Supreme Court recently reinforced this proposition in *Wilkinson v. Garland*, 144 S. Ct. 780, 788 (2024).

that is purely discretionary in nature" does not amount to a due process violation). As a result, we "ha[ve] not permitted a *constitutional* due process claim based on the denial of discretionary relief like cancellation of removal." *Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th 1208, 1220 (11th Cir. 2023) (emphasis in original). So, because Alkotof raises a constitutional argument in the context of discretionary forms of relief—the denial of a motion to remand and conclusion that he was not eligible for cancellation of removal—we do not have jurisdiction to review it.

Alkotof's legal argument is tethered to his constitutional due process argument. He argues that he was denied due process *because* the BIA decided his motion to remand in the first instance, preventing his application from being properly considered by the IJ. As such, his legal argument is also not subject to our jurisdiction.

Accordingly, we dismiss Alkotof's appeal as it relates to the motion to remand.

### 2. *Administrative Closure or Continuance*

We next consider Alkotof's argument that the BIA violated his due process rights by denying his motion to administratively close or, in the alternative, continue his removal proceedings as he awaits adjustment of status and adjudication of his U-Visa petition.[15]

---

[15] Although Alkotof also seems to challenge the BIA's denial of his motion to administratively close or, in the alternative, continue as he awaits the appeal

Administrative closures and continuances are procedural tools that an IJ or the BIA may use to temporarily suspend removal proceedings. "Administrative closure . . . temporarily remove[s] a case from an [IJ's] active calendar or from the [BIA's] docket." *Matter of Avetisyan*, 25 I. & N. Dec. at 692. It "may be appropriate to await an action or event that . . . is outside the control of the parties or the court and may not occur for a significant or undetermined period of time." *Id.* A continuance is slightly different. It "keeps a case on the [IJ's] active calendar" and "may be appropriately utilized to await additional action required of the parties that will be, or is expected to be, completed within a reasonably certain and brief amount of time." *Id.* at 691. "[A] continuance may be granted at the [IJ's] own instance or, for good cause shown, upon the request of a party." *Id.* at 691–92.

Before diving into the merits, we confirm our jurisdiction over Alkotof's claims. *Bing Quan Lin*, 881 F.3d at 866. We have held that we have jurisdiction over the denial of a motion for continuance. *Chacku*, 555 F.3d at 1285–86. Although we have never opined on whether we have jurisdiction to review the denial of administrative closure, denials of administrative closure are not statutorily proscribed discretionary acts enumerated in the jurisdictional-stripping provision of 8 U.S.C. § 1252(a)(2)(B). *See*

---

of his revoked I-130 petition, the BIA explained that the appeal of Yehia's I-130 visa petition revocation had been dismissed for lack of standing. Because the appeal of Yehia's I-130 visa petition is no longer pending, we need not address Alkotof's argument about it.

*Kucana v. Holder*, 558 U.S. 233, 248 (2010) (stating, in discussion on § 1252(a)(2)(B), that "[i]f Congress wanted the jurisdictional bar to encompass decisions specified as discretionary by regulation along with those made discretionary by statute . . . Congress could easily have said so"). For this reason, and because denials of administrative closure so closely parallel denials of continuances, we hold that we have jurisdiction to review administrative closure determinations.

Furthermore, many of our sister circuits have addressed this issue and determined that they possess jurisdiction to review administrative closure determinations, which bolsters our conclusion. *See Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 891–93 (9th Cir. 2018) (concluding jurisdiction exists to review denials of administrative closure because *Matter of Avetisyan*, 25 I. & N. Dec. at 692, provided a "sufficiently meaningful standard" for review of an agency's decision (quotations omitted)); *Gonzalez-Vega v. Lynch*, 839 F.3d 738, 741 (8th Cir. 2016) (same); *Vahora v. Holder*, 626 F.3d 907, 918 (7th Cir. 2010) ("Simply put, the decision to grant or deny administrative closure is cut of the same cloth as various other decisions that we review with regularity in both administrative and non-administrative arenas.").

We now turn to the merits. When an administrative closure or a continuance is improperly granted or denied, procedural error may occur. We have previously held that, "[t]o establish a due process violation, the petitioner must show that [he] was deprived of liberty without due process of law and that the purported errors

22-10863                Opinion of the Court                19

caused [him] substantial prejudice." *Lapaix v. U.S. Att'y. Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). "To show substantial prejudice, an alien must demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different." *Id.* Our sister circuits have reached a similar conclusion.[16] We conclude that even if the IJ erred in denying Alkotof's request to administratively close or continue proceedings to await adjustment of status and adjudication of his U-Visa petition, Alkotof is not entitled to relief because he cannot show that he was prejudiced by the alleged procedural error.

First, Alkotof cannot show prejudice based on his pending I-485 adjustment of status application because he was not eligible for adjustment of status. "The status of an alien . . . may be adjusted by the Attorney General" if "an immigrant visa is immediately available to [the alien] at the time his application is filed." 8 U.S.C. § 1255(a). An immigrant has an "immediately available" visa when he may access a valid immigrant visa number. *Merch. v. U.S. Atty. Gen.*, 461 F.3d 1375, 1378 n.4 (11th Cir. 2006). If

---

[16] *See Uzodinma v. Barr*, 951 F.3d 960, 967 (8th Cir. 2020) ("Even if the BIA committed a fundamental procedural error, reversal would require Uzodinma to show prejudice."); *Zhou Zheng v. Holder*, 570 F.3d 438, 442 (1st Cir. 2009) (explaining that to prevail on a procedural due process claim "a complainant must, among other things, show prejudice," which "equates with a showing that an abridgement of due process is likely to have affected the outcome of the proceedings" (quotations omitted)); *De Zavala v. Ashcroft*, 385 F.3d 879, 883 (5th Cir. 2004) ("As we conclude that DeZavala has failed to establish that she was substantially prejudiced by the procedural error she advances, we reject her claim for violation of procedural due process.").

an approved I-130 petition (and its accompanying immigration visa number) has been revoked, that revocation "shall be effective as of the date of approval of any such petition."  8 U.S.C. § 1155. Alkotof's I-485 application for adjustment of status was contingent on an approved I-130 petition.  *See* 8 C.F.R. § 245.2(a)(2)(i)(B); 8 U.S.C. §§ 1154, 1255(a).  Because Yehia's approved I-130 petition had been revoked, Alkotof lacked an immediately available visa and was not eligible for adjustment of status by the IJ.  *See Chacku*, 555 F.3d at 1284 ("[B]ecause a visa was not immediately available to Chacku, he failed to make a prima facie showing that he was eligible for an adjustment of status.").[17]  Accordingly, Alkotof cannot demonstrate prejudice on the basis of his adjustment of status application.

Second, Alkotof cannot show that he was prejudiced by the BIA's refusal to grant administrative closure or a continuance due to his pending U-Visa petition.  He argues that there was a "significant likelihood that he would be granted relief through . . . a U[-V]isa," and relief "would fundamentally alter the effect of his removal proceedings by rendering them moot."  He thus argues that he should have been granted a continuance for

---

[17] Other circuits agree with this approach.  *See Grass v. Gonzales*, 418 F.3d 876, 879 (8th Cir. 2005) (stating that "there was no abuse of discretion" where BIA stated individual was not eligible for adjustment of status based on an allegedly *pending* I-130 petition); *Oluyemi v. I.N.S.*, 902 F.2d 1032, 1033 (1st Cir. 1990) (stating "[w]e can find nothing unlawful about the [IJ's] decision not to permit the petitioner to stay in this country *pending* the outcome of his wife's visa request" because there was no visa immediately available (emphasis added)).

"good cause."   But he makes no showing of this "significant likelihood" of success and fails the "good cause" balancing test.

An IJ "may grant a motion for continuance for good cause shown[.]"  8 C.F.R. § 1003.29.  The BIA has held that, to assess whether "good cause" exists to grant a continuance for adjudication of a U-Visa petition, IJs and the BIA must consider two primary factors: "(1) the likelihood that the alien will receive the collateral relief, and (2) whether the relief will materially affect the outcome of the removal proceedings." *Matter of L-N-Y-*, 27 I. & N. Dec. 755, 757 (BIA 2020) (quotations omitted).  IJs and the BIA "must also consider relevant 'secondary factors,' which include, but are not limited to" the following: (1) "the alien's diligence in seeking collateral relief," (2) "DHS's position on the motion for continuance," and (3) "concerns of administrative efficiency."  *Id.* (quotations omitted).  "It is also appropriate to consider the length of the continuance requested, the number of hearings held and continuances granted previously, and the timing of the continuance motion."  *Id.* (quotations omitted).  "As with any balancing analysis requiring consideration of multiple factors, an alien's strength on certain factors may compensate for a weaker showing on others."  *Id.* (quotations omitted).

The balancing of factors weighs against Alkotof.  As for the first primary factor considered by the BIA, Alkotof did not demonstrate why his U-Visa petition is likely to succeed.  *Id.*  As for the second primary factor, while a grant of a U-Visa "would materially affect the outcome of . . . removal proceedings," that

factor is "not dispositive." *Id.* at 757–58. "This is especially so where, as here, there are relevant secondary factors that weigh against continuing the proceedings," such as DHS's opposition to another continuance, "concerns regarding administrative efficiency" in the form of "uncertainty as to when a visa will be approved or become available," and the fact that seven other continuances had been previously granted. *Id.* at 757–58. The balancing analysis thus shows that the BIA did not abuse its discretion in denying Alkotof a continuance for "good cause."

Alkotof also cannot show that he was prejudiced by the BIA's refusal to grant administrative closure or a continuance due to his pending U-Visa petition because he may continue to pursue his U-Visa application even after the entry of the final order of removal. *See id.* at 760 (stating that "respondent may continue to pursue his U[-V]isa, even after he is removed"); 8 C.F.R. §§ 214.14(c)(1)(ii), (5)(i)(B) (stating that "[a]n alien who is the subject of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U–1 nonimmigrant status directly with USCIS" and may continue to pursue such relief even after removal).

Consequently, we conclude that the BIA acted within its discretion in denying Alkotof's motion to administratively close or continue his removal proceedings.

## IV.    Conclusion

Because we conclude that we lack jurisdiction over Alkotof's motion to remand for cancellation of removal and that the BIA did not abuse its discretion in affirming the IJ's denial of Alkotof's

request for an administrative closure or a continuance, we affirm in part the BIA's decision and dismiss in part Alkotof's petition for review.

**AFFIRMED IN PART AND DISMISSED IN PART.**